179 So.2d 51

**Fred Lyndon ALDRIDGE**

v.

**STATE.**

**6 Div. 214.**

Supreme Court of Alabama.

Sept. 30, 1965.

472

---

Nolen & Enslen, Fayette, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

**HARWOOD, Justice.**

This is an appeal from an order of the Circuit Court of Fayette County denying a petition for a writ of error coram nobis and remanding the petitioner to the Warden of Kilby Prison.

On 27 February 1961, the petitioner, Fred Aldridge, was adjudged guilty of murder in the first degree and sentenced to life imprisonment.

No step looking toward an appeal was taken following petitioner's conviction. While the petitioner testified he had desired to appeal, no steps were taken. His attorney who represented him at his trial testified in the hearing below that an appeal was discussed, and he had told petitioner what his fee would be, but he heard nothing further from petitioner.

The solicitor who prosecuted the case at the trial testified that on a visit to the jail on another matter, after petitioner's conviction, he had seen petitioner and inquired of him if he intended to appeal his conviction and petitioner had replied that he did not so intend. Regardless, the fact remains that no steps were taken to perfect an appeal, and neither the trial judge nor any official representing the state was informed of any desire on petitioner's part to appeal the judgment.

In connection with the coram nobis hearing, the court below ordered that a full transcript of the record of the petitioner's trial in the murder case be prepared and sent to this court along with the transcript of the record made in the coram nobis hearing. In addition, the attorney representing the state in the coram nobis proceeding also introduced in evidence a full transcript of the evidence taken in a habeas corpus proceeding instituted by the petitioner prior to his murder trial, this habeas corpus proceeding having been instituted by petitioner in an effort to gain bail.

We have examined this mass of evidence and proceedings in connection with our review of the coram nobis proceeding.

In the coram nobis proceeding it seems to have been the policy of the court and counsel to give the petitioner full freedom in presenting any and all matters that might occur to him in an effort to support his petition. This was done to the extent that in many instances fundamental rules for the admission of evidence were not invoked to limit petitioner's efforts.

At the petitioner's trial on the murder indictment the petitioner was represented by counsel of his own choice, employed and paid by petitioner or members of his family.

In the coram nobis proceeding petitioner was represented by counsel appointed by the court. Their representation was full, diligent, and competent.

The petitioner has alleged some 24 grounds as a basis for his petition for a writ of error coram nobis. Many of these grounds overlap.

Ground 1 asserts petitioner, in his murder trial, was tried by a prejudiced court; Ground 6 asserts that the trial court made a statement that he knew petitioner was innocent of the charge, but he was afraid petitioner would kill someone else if he did not have him convicted, and Ground 8 asserts that the trial court conspired with the prosecution to have him convicted.

As to Ground 1, appellant's rambling testimony is difficult to interpret, but is to the general effect that something was wrong with his trial in that he was convicted; that numerous people had come to him after his conviction and told him he had gotten a raw deal, and they knew he was innocent. One of these had been to a fortune teller and been told that he was innocent, that he knew of nothing else to say in support of this ground.

As to Ground 6, appellant testified that the trial judge had made such a statement to Edwin Strickland. Strickland denied that the trial judge had ever made a statement, or that he had ever told petitioner that the trial judge had made such a statement.

When asked if he had anything to say as to Ground 8, or any evidence to support the assertions of Ground 8, petitioner stated that he did not write the petition, that another prisoner had prepared it for him.

Ground 2 asserts that his "jury trial was prejudiced and influenced by the state's prosecutor, while" (petitioner) "was not in the courtroom."

■ This ground is based upon the fact that during the examination of a state's witness, the petitioner momentarily left the courtroom. The state's evidence shows that only one question was asked during petitioner's absence, and upon the court's attention being called to petitioner's absence, the proceedings were suspended until petitioner returned. The question was then repeated to the witness. Clearly the petitioner was not injured by this instance. Further, the petitioner having voluntarily absented himself, he is in no position to complain. An accused cannot by his own voluntary conduct invite error and then seek to profit thereby. It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice. Jackson v. State, 38 Ala.App. 114, 78 So.2d 665.

Ground 3 asserts that the prosecution did not prove his guilt beyond a reasonable doubt, and that the verdict is contrary to the evidence.

■■ A writ of error coram nobis does not lie to enable the petitioner to question the merits of the case or correct an error of fact which has been adjudicated. Ex. parte Seals, 271 Ala. 622, 126 So.2d 474. However, after our reading of the transcript of the evidence in the murder trial, we are clear to the conclusion that the verdict and judgment are amply supported to the required degree by the evidence presented in the trial.

■ Ground 4 asserts that petitioner was confined for seven days before a complaint was filed against him.

This matter was not raised in his trial. Additionally, no question of any confession is involved.

■■ Ground 5 alleges that petitioner was not arraigned until the day of his trial; Grounds 7 and 18 assert petitioner was not served with a copy of the indictment against him; Ground 11 asserts that petitioner was not represented by counsel at his arraignment.

The record of the murder trial shows that petitioner, accompanied by his counsel, was arraigned on 27 February 1961, and entered a not guilty plea. At the arraignment, it was stipulated that the defendant and his attorneys agreed to waive a special venire and service of a copy of the indictment, and the state agreed to waive any demand for capital punishment.

The record further shows that the trial was begun on 3 March 1961, some several days after his arraignment. Counsel for petitioner in his murder trial also testified to facts fully substantiating the record matter above mentioned.

■ Ground 9 asserts that petitioner was not afforded a preliminary hearing. The transcript of the evidence taken at the habeas corpus proceeding shows that it was stipulated that petitioner had waived a preliminary hearing prior to the institution of the habeas corpus proceeding. Both attorneys who represented the petitioner in the murder trial testified that they waived a preliminary hearing, and instead instituted habeas corpus proceedings because they desired a transcript of the testimony of the state's witnesses to be used in the later trial of the murder case.

█ This aside, no constitutional right of an accused is violated in not giving him a preliminary hearing. Green v. Bomar, (6 Cir.), 329 F.2d 796; Campbell v. State, 278 Ala. 114, 176 So.2d 242; Woodward v. State, 42 Ala.App. 552, 171 So.2d 462.

█ Ground 13 asserts that petitioner was suffering from a physical ailment requiring the taking of medicines at the time of his murder trial and as a result was incapable of making decisions of his own.

In the hearing below the petitioner testified that he knew what was going on during his murder trial; he did not know what was wrong with him physically, but his doctor had told him it was "nerves."

Counsel who represented petitioner in his murder trial testified that petitioner had some sores on his head and private parts when he was arrested. They arranged for a doctor to treat him. Petitioner appeared in possession of all his faculties, and not to be sufficiently disabled for them to ask for a continuance because of any physical disability. Further, the petitioner insisted on a speedy trial and was opposed to any continuance.

█ Ground 14 asserts that petitioner was deprived of due process of law in that he was not furnished with a transcript of record in his murder trial, and his motion for such transcript was denied by the court.

The records fail to show that petitioner ever requested a transcript of his murder trial. Since no appeal process was ever initiated no occasion arose to prepare such a record. However, as before stated, the lower court did order such record to be forwarded to this court along with the record prepared in the coram nobis proceeding, and such record is before us.

█ Ground 15 asserts that petitioner was denied due process of law in that "the Grand Jury which returned the indictment against him was drawn from the same venire as the petit jury which tried the case of petitioner."

This point was not raised in the murder case, and was therefore not available to the petitioner in the coram nobis hearing below. Ex Parte Aaron, 275 Ala. 377, 155 So. 2d 334; cert. den. 375 U.S. 898, 84 S.Ct. 177, 11. L.Ed.2d 126. Further, Section 30, Title 30, Code of Alabama 1940, directs the judge of the court to draw from the jury box at any session the names of not less than fifty persons to supply the grand jury for such session and the petit jury for the first week of the session of court. Since the petitioner had waived a special venire, no right of the petitioner was infringed in this aspect.

Grounds 10, 12, 19, 20, 23, and 24, allege inadequacy of counsel in various ways. These grounds were not supported by the evidence presented below, and a reading of the transcript of the record in the murder trial refutes these grounds. The state presented a number of witnesses, attorneys who had attended the murder trial who testified to the excellence of the representation afforded the petitioner by his counsel. It is to be noted that the last witness presented by the state in the coram nobis proceeding was Mr. C. M. Holder, an attorney of long experience in the Fayette County Bar. Mr. Holder testified he had attended the murder trial throughout, and in his opinion the defense attorneys had represented the petitioner in an excellent manner. At this point the petitioner volunteered the statement " * * * and I do too." When questioned as to the remark, the petitioner stated until the coram nobis hearing there were matters he had not understood, but now he thought his counsel had done a good job.

█ The fact that an accused is convicted in no wise tends to reflect upon, or establish, any lack of competency or zeal on the part of his counsel. Echols v. State, 276 Ala. 489, 164 So.2d 486.

■ Ground 17 is to the effect that the sheriff failed to serve witnesses requested by the petitioner at his murder trial.

As we gather from petitioner's testimony in support of this ground, he thought Mr. Brooks and Mr. Baker, a probation officer who had the deceased under supervision at the time he was killed, should have been subpoenaed. No subpoenas were requested for these two witnesses. Counsel representing petitioner at his murder trial testified that they had driven to Tuscaloosa and interviewed Mr. Baker. He had no personal knowledge of any fact pertaining to the alleged murder, and any information he had was hearsay and inadmissible under any theory of evidence. For this reason no subpoena was requested for Baker.

Mr. Brooks was one of the state's investigators concerned with investigating the killing of the deceased. Defense counsel testified they had free access to all evidence procured by the state, and nothing was held back. It was counsel's view that nothing beneficial to the defense would be secured from calling Mr. Brooks as a defense witness, and no subpoena was requested for Mr. Brooks.

Ground 22 asserts that evidence beneficial to petitioner discovered during the state's investigation, was not made available to the defense and was withheld at the trial.

No evidence tending to support Ground 22 was presented at the hearing below. Counsel who represented petitioner at his murder trial testified they had full access to the evidence discovered by the state, and that no information was withheld from them.

■ In the hearing below it was sought to establish that a knife taken from petitioner at the time of his arrest, and a pistol given to investigating officers by the wife of the petitioner a few days after the discovery of the murder were improperly received in evidence, since, as now contended these weapons were procured as a result of unlawful searches and seizures.

Upon laboratory examination human blood was found on each weapon.

As before stated, the knife was taken from the person of the petitioner at the time of his arrest. A day or so later investigating officers went to petitioner's home and asked petitioner's wife to deliver to them a pistol. A daughter who was present told her mother (petitioner's wife) to get the pistol. Petitioner's wife went into the house, returned with the pistol, and delivered it to the officers.

No need arises to belabor the legality of petitioner's arrest, nor the validity of the surrender of the pistol to the officers by petitioner's wife.

First, examination of the transcript of the evidence in the murder case discloses that no objection was interposed to the reception of these exhibits in evidence. This point is therefore clearly not now available to petitioner under our decisions. The federal appellate courts do not seem to apply the federal plain error rule to assertions made on appeal that a judgment should be set aside because evidence was admitted in the trial which was obtained by an unlawful search and seizure where there was no motion to suppress nor any objection interposed on that ground at the trial. See Gendron v. United States, 8 Cir., 295 F.2d 897; Robinson v. United States, 8 Cir., 327 F.2d 618.

Secondly, at the murder trial the petitioner testified that the pistol was not his, but belonged to his wife.

■ The right to protection against an unlawful search is personal, and a defendant in a criminal case who denies any proprietary or possessory interest in seized property has no standing to object to the method of seizure. Shurman v. United States (5th Cir.), 219 F.2d 282; United States v. Serrano (2nd Cir.), 317 F.2d 356; Williams v. United States (10th Cir.), 323 F.2d 90; United States ex rel. Smith v. Reincke, D.C., 239 F.Supp. 887.

Because of the utter lack of petitioner's evidence to establish the grounds asserted in his petition and the strength of the state's

countervailing evidence, this appeal might well have been disposed of by a simple affirmance of this judgment without an opinion.

However, the state has spent hundreds of dollars in furnishing full transcripts of the habeas corpus proceeding instituted by the petitioner, of his trial on the murder indictment, and of the present coram nobis proceeding. In addition, the attorneys appointed by the court to represent the petitioner in the coram nobis proceeding, and in this appeal are to be compensated. We have therefore written to each and every point the petitioner has raised. We do this in hopes that this opinion may furnish an answer to any future post conviction reviews this petitioner may undertake. From experience we know that any matters not raised in the original post conviction proceedings are very likely to be the subject of subsequent post conviction proceedings, no matter how trivial or baseless the grounds asserted by the duly convicted prisoner may be.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, MERRILL, and COLEMAN, JJ., concur.