283 So.2d 664

**Gene Olive BLEVINS**

v.

**STATE.**

**8 Div. 206.**

Court of Criminal Appeals of Alabama.

Sept. 28, 1973.

William J. Baxley, Atty. Gen., and John J. Pilgrim, Sp. Asst. Atty. Gen., for the State.

Benjamin E. Pool, Montgomery, for appellant.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was tried on an indictment charging him with murder in the first degree. A jury found him guilty of murder in the second degree and fixed his punishment at imprisonment in the penintentiary for a term of twenty years  The trial court rendered judgment and sentence accordingly. Appellant (defendant) filed and presented a motion for new trial, which was overruled by the trial court. This is an appeal from such judgment and sentence and from the order overruling defendant's motion for a new trial.

The death of the alleged victim, Roland Laverne Hill, occurred early on the evening of July 9, 1971, in front of his residence in Sheffield, which he was accustomed to utilize as a place to sell and dispense beer and hard liquor and, according to some witnesses, to gamble occasionally with some of his patrons.

There are some conflicts as to items of time, location and other details, but in general the evidence was without dispute that a group of more than a dozen had assembled after an afternoon ball game and were in the process of buying and drinking from Hill's supply. Most of them were some of the ball players. The defendant was not one of the ball players; neither was his companion Jerry Brewer. The two entered the house together; Brewer ordered and obtained two cans of beer from the refrigerator, gave one to defendant, and after a short time (the exact time being variously estimated) stated to Hill that he wanted to see him outside. They left by the front door, and in a short time defendant also went out the front door. Soon thereafter those inside heard shots outside in front of the house. After subsidence of the immediate excitement and confusion, Hill was found mortally wounded by at least two bullets that struck his chest. He was taken to the hospital, where he died.

One other person left the house before the shooting occurred. He testified to the effect that he had cleared the premises well before the shooting started.

No witness definitely identified by sight either Brewer or defendant as the one who shot Hill, but there was definite evidence that two white men left in an automobile from in front of the house. One witness testified that one of the two in the automobile was shooting while the other was driving. There was no evidence by anyone to the effect that either defendant or Brewer tarried after the shooting. There was a variance in the evidence as to the number of shots that were fired, but the overwhelming weight of the evidence was to the effect that there were two separate series, although the intervening time was short. The evidence indicates that two or three or more shots were fired in the first series and three or four or more in the second.

Defendant and Brewer had been seen together in Hill's house, as well as at other places, on several previous occasions. Later that night they were located in a mobile home in Florence where they had apparently retired for the night. No one else was in the mobile home at the time. They were arrested by officers with warrants, and at the time a .38 caliber revolver was found under the bed occupied by defendant. It had in it at the time three empty cartridge shells and three live cartridges. About forty-five minutes or an housr after the arrest of the two and their transportation to jail, officers returned to the mobile home and found a 45 Colt automatic near the bed previously occupied by Brewer.

Expert testimony was to the effect that Hill had been killed by a large caliber pistol, a 45, and a slug in his spinal column was identified as such. Empty 45 cartridges were found in or about the yard. A slug was taken out of the wall in front of the house of decedent, and it was identified as a spent slug from a 38 pistol. The testimony was that the hole made by the slug was fresh.

Brewer had also been indicted for murder in the first degree of Roland Hill, but it was by separate indictment. Neither defendant nor Brewer testified in the case.

Defendant's witnesses were Barbara Clark and Sheila Brewer, a sister of Jerry Brewer. Barbara Clark had rented the trailer or mobile home at which defendant and Brewer were arrested from the operator of the trailer park. Barbara Clark testified that the 38 caliber pistol found under the bed occupied by Blevins was, in fact, owned by her, that she placed the gun under the bed and had fired it three times after she purchased it three weeks prior to the death of Roland Hill. Sheila Brewer testified that the last time she saw Roland Hill was on July 1, when she saw him in the presence of her brother, Jerry Brewer. This was substantially all of her testimony, as the court sustained State's objection to several other questions asked the witness by defense counsel, which rulings of the court are the basis for some of appellant's assertions of error.

Appellant takes the position that the trial court committed reversible error in connection with its consideration of the qualifications, claims of exemptions from jury service and reasons or excuses offered by jurors as to why they should not be required to serve on the panel from which the jury was selected to try defendant. It is charged that there was a violation of Title 30, § 63, Code of Alabama 1940 (Recomp. 1958), which provides for the drawing and summoning of a special venire in capital cases. The record shows that the trial court in open court inquired of all of the jurors on the general venire and on the special venire as to their qualifications and any excuses or reasons for not serving, in the presence of defendant and defendant's counsel and others, but that after inquiry by the court of such jurors of the general venire and obtaining their responses, the trial judge went into an anteroom with the prosecuting attorney and attorney for defendant, and with a clerk of the court and the court reporter, and there the trial judge discussed with counsel for the State and counsel for the defendant each juror who had indicated that he was disqualified, or that he should be excused. A similar procedure and discussion in an anteroom took place after the inquiry had been made of the special venire. Defendant was not present in the anteroom during either discussion. In the course of the discussions, counsel for the defendant was afforded an opportunity to state his position as to each of said jurors, that is, whether it would be agreeable with him in representing defendant for the particular juror to be discharged or excused, or whether on the other hand he wished for the juror not to be released from the panel from which the jury was struck. Counsel for defendant agreed to the court's releasing several of said jurors. It seems that no point is made to the effect that the court erred to the prejudice of defendant either in releasing or in holding any of said jurors. Strong insistence is made, however, that the court was in error in conducting the discussion stated out of the presence of the defendant. Counsel for appellant relies heavily upon Draper v. State, 250 Ala. 679, 36 So.2d 73; Lassiter v. State, 36 Ala.App. 695, 63 So.2d 222, and other cases that make it clear that in a capital case the defendant has the right to be present during the selection of the jury and should have the opportunity to participate therein. In *Lassiter* it was stated:

> "A defendant in a capital case has a right to have excuses from jury service heard and determined at the time of trial as a part thereof, so that he may know the facts on which the excuse is based, and if defendant desires, make showing that the excuse is not valid. This requirement is mandatory, and its denial compels reversal when properly presented."

The point was made by defendant's counsel on the trial of the case, but it was not made until after both of the discussions in the anteroom had taken place. It is obvious that everyone in the anteroom

knew that the defendant was not in the anteroom at the time. There seems to be no contention that he was denied access to the anteroom at any time. That he could have been of benefit to his cause by his attendance upon the discussions in the anteroom is possible, but it is also possible that he could have probably served his cause better by remaining in the court room. It seems to us that defendant's able counsel would have made known to defendant and to the court that defendant's presence was desired in the discussions if it appeared to defendant's counsel that such presence would have been to the best interest of defendant. The record shows no effort along this line, and there is nothing in the record to indicate that a request accordingly would have been denied. The record shows that at each of the mentioned discussions in the anteroom, defendant's counsel was an active participant. It appears that there was no reluctance whatever on his part to give his views as to whether the particular jurors considered should or should not be released. The trial court accepted his views as to almost all of the jurors mentioned. It seems clear that defendant's counsel, with the best interest of defendant in mind, voluntarily entered into each of the discussions with the proper objective of furthering the best interest of the defendant, and as to this we think he succeeded. The trial judge made no rulings in the anteroom. His rulings as to all of such jurors were made in open court and in the presence of the defendant, as well as defendant's counsel. No objection, no exception, no request for further consideration was there made. After jurors on the special venire had been excused by the court, as jurors on the general venire had been previously excused in open court, the trial judge, prosecuting attorney, defendant's attorney, a clerk of the court and the court reporter retired for the third time to the anteroom. At such time they were accompanied by the defendant. A deputy sheriff was also in the anteroom, and he was questioned by the court as to one of the jurors whose name was on the special venire and who had been reported as having the flu. The trial judge asked defendant's counsel if he cared to investigate that matter further, and he replied that he did not. The court then and there excused the juror on the ground that he had the flu. Immediately thereafter, defense counsel stated in the record that defendant had filed a plea in abatement, setting forth action of the trial court as to the conferences in the anteroom out of the presence of the defendant.

It is our opinion that the conferences or discussions complained of out of the presence of the jury and defendant were not such essential parts of the trial of the case as to require the presence of the defendant. They were obviously for the purpose of obtaining the views of defendant's counsel for consideration. The rulings were made in the presence of the defendant. Furthermore, it is our opinion that the voluntary and active participation on the part of defendant's counsel in the conferences and discussions, which resulted in substantial benefit to defendant, works an estoppel against defendant as to his subsequent contention that the discussions and conferences under the circumstances amounted to a denial of his right to be present. We hold that the trial court was not in error in overruling the contention of defendant's counsel on the point. None of the cases cited by appellant involved a situation similar to the one existing here. In *Draper*, supra, the action of the trial court that caused reversal was in excusing a juror "on the previous day by the trial judge without the knowledge or consent of the defendant or his counsel, and in fact at a time when the court was not in session." In *Lassiter,* supra, the erroneous action consisted of the trial court's excusing jurors prior to the trial and without the consent or knowledge of the appellant. In Crump v. State, 28 Ala.App. 103, 179 So. 392, the error was in excusing veniremen prior to the date set for trial. In Neal v. State, 257 Ala. 496, 59 So.2d 797, and Chaney v. State, 36 Ala.App. 374, 56

So.2d 385, the trial court was reversed for giving additional instructions to the jury in the jury room in the absence of defendant, even though defendant's counsel and others were present. In Lee v. State, 31 Ala.App. 91, 13 So.2d 583, the trial court was held to have been in error in receiving a verdict in the absence of defendant. The reasons for reversal in all of such cases are inapposite in this case.

Although we do not consider that the discussions in the anteroom among the trial judge, prosecuting attorney and defense counsel were parts of a trial at which defendant's presence is generally considered necessary in order to validate the trial, it is to be noted that even when the particular part was of such a nature, it has been held in some instances that the trial court was not in error in proceeding therewith in defendant's absence if he had voluntarily absented himself. It was so held in Aldridge v. State, 278 Ala. 470, 179 So.2d 51, as to a question to a witness; in Jackson v. State, 38 Ala.App. 114, 78 So.2d 665, as to additional instructions to the jury, and in McNutt v. State, 25 Ala.App. 129, 142 So. 773, as to the oral charge of the court. As stated in *Aldridge:*

" . . . . Further, the petitioner having voluntarily absented himself, he is in no position to complain. An accused cannot by his own voluntary conduct invite error and then seek to profit thereby. It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice. Jackson v. State, 38 Ala.App. 114, 78 So.2d 665."

The 45 caliber automatic pistol was admitted in evidence over defendant's objection. It had been found by officers after they returned to the trailer or mobile home between 45 minutes and an hour after the arrest of defendant and Brewer. They had no search warrant. In assigning grounds, defendant's counsel stated:

" . . . . The weapon was obtained by illegal search and seizure, it was not pursuant to a search warrant, not pursuant to an arrest of any person, certainly not pursuant to the arrest of this defendant. There is no evidence, circumstantial or otherwise, connecting this weapon with this defendant. The gun is otherwise illegal, irrelevant and immaterial and prejudicial to the rights of this defendant."

In his brief, counsel for appellant urges that the warrantless search that produced the 45 caliber pistol was illegal in the light of the provisions of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 5, Constitution of Alabama 1901.

It appears that a motion to suppress evidence obtained at the trailer had been filed prior to a previously scheduled trial of defendant, which lasted three or more days but terminated in a mistrial by reason of a juror's falling out of a window of the courthouse. It also appears that such motion was heard before that scheduled trial, but the record does not show what took place at such hearing, other than that the motion was overruled.

Evidence in the case shows that when the officers first entered the trailer, they had warrants of arrest for defendant and Brewer, that they were led to the trailer by the owner of the trailer park, who was at hand at the time of their entry, that Brewer did not have on his shoes but that otherwise he was fully dressed. Defendant had been sleeping in his underclothes. Barbara Clark had rented the trailer approximately three days before the arrest; she was paying rent on it for her own personal use; no one lived with her there; there were two beds in the trailer; she was not at the trailer at the time of the arrest, which occurred a short time after midnight; she had not been there since about 7:30 P.M. at which time she merely went there to change her clothes. She never lived there after the occasion involved and only went there one time thereafter to pick up the clothes she had left. It appears that she

had no possessions in the trailer other than some clothes and some items such as her hair spray and comb. She stated that at the time she "hadn't moved in good yet." She stated: "They had access to my trailer because I didn't have a key to the door at any time." She said that they were good friends of hers. She further said, "They had permission to be in the trailer when they came to see me. I had no idea that they were hiding or anything else of the sort." She also said that if she had known the police had been looking for them, she would not have given them permission to go in her trailer and that if she had known "they were hiding or anything else of the sort" she would not have given them access to the trailer.

Appellant does not contend that the 38 caliber revolver was obtained by an illegal search.

■ It is our opinion that the status of appellant does not permit him to raise efficaciously a question of the validity of the search that resulted in obtaining the 45 caliber automatic. It may be questionable as to whether Barbara Clark under all the circumstances could successfully contend that there was an illegal search of the trailer, but whatever trespass there may have been as to her, the result was of no vicarious benefit to defendant. He had no possessory right as to the trailer, either at the time of his arrest or at the time of the finding of the 45 caliber automatic. At times he had permission to be there, but that was "when they came to see" her. There is no basis for any inference that they were there to see her on this particular occasion. Furthermore, at the time of the search complained of, it is clear by the express statement of Barbara Clark that they would not have been welcome, that is, that they would have been trespassers instead of invitees. In addition, any trespass that might have been involved in the taking of the automatic would not have been a trespass to anyone other than someone

who had a possessory right to the automatic. Appellant does not claim such a right. He insists that the automatic did not belong to him, and there is no evidence and no contention to the effect that it belonged to anyone other than Brewer.

In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) it was stated:

"We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960.) Cf. Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943). None of the special circumstances which prompted NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and Barrows v. Jackson, 346 U.S. 249, 73 S. Ct. 1031, 97 L.Ed. 1586 (1953), are present here. There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when and if it becomes important for him to do so."

To the same effect as are Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L. Ed.2d 208 (1973); United States v. Shea, 436 F.2d 740 (9th Cir. 1970); United States v. Parrott, 434 F.2d 294 (10th Cir. 1970).

Defendant's counsel made several attempts to show that about ten days prior to the death of Hill, Hill had served Sheila Brewer with a drink containing some drug and that as a result of the drug Sheila was hospitalized. The record shows that in most of these efforts witnesses sought to

be interrogated would not have been able to answer the questions to which objections were sustained. In some of the efforts defendant's counsel did not make known to the court at the time the purpose of the efforts, but on one occasion defendant's counsel stated that he was offering it to show "a motive at the time of the killing on the part of Brewer which would be evidence in favor of this defendant here." He stated that if the evidence should tend to show a motive on the part of Brewer, that would be evidence in favor of the defendant and that it was being offered for that purpose. On appeal, appellant's counsel takes the same position and cites authoritative cases holding that evidence tending to show guilt upon the part of another, particularly a motive and an opportunity for killing the victim of a homicide, is admissible evidence when offered by the defendant. In the cases cited, however, evidence of guilt of another would have been evidence of innocence of the defendant. Such is not true in this case. The record here shows that the issue was not whether this defendant alone killed Hill. Nobody seemed to contend that, and there was no evidence to that effect. The real issue was whether defendant was acting in concert with Brewer in the killing of Hill.

In Wigmore on Evidence, 3d Ed., § 139, we find in pertinent part:

"Commission of Crime by a Third Person. If X is charged with homicide, committed by himself alone, and it is shown in disproof that Y did the killing, X is clearly exonerated; for the fact that Y has done it is inconsistent with and exclusive of X's guilt:

"1833, GASTON, J., in State v. May, 4 Dev. 328, 338 (larceny of a slave): 'The criminal act imputed to the prisoner might as readily be committed by many as by one. . . . Both [W. M. and the defendant] might be guilty, or both might be innocent; and a common guilt or a common innocence was as presumable as the guilt of one only. . . .

But proof that certain acts constituting a part of the criminal transaction itself were done by W. M. might have been of high importance to the prisoner by removing so much of the inference of guilt as would be raised were those acts brought home to him. . . . Proof that the taking was by other than the prisoner perhaps might repel this inference [of guilt],—not because the guilt of one shows the innocence of the other, but because proof that specific acts were done by one weakens or removes the presumption that the same acts were done by another.'

*"There are, of course (as the preceding passage shows), cases in which X is by hypothesis in some way an accomplice of Y, either at a distance or as a personal sharer;* and there is even the rare case of independent and double felonious acts upon the same object. *To such cases the argument cannot apply.* * * * (Emphasis supplied)."

In 22A C.J.S. Criminal Law § 622, it is stated:

"While it is always proper and relevant for accused to show that someone else committed the crime *without his aid or participation,* the admissibility of evidence offered to establish such fact depends on the circumstances of the case as well as the character of the evidence offered; but in general competent evidence which tends to prove that another committed the crime for which the accused is being tried is admissible *if it is inconsistent with the guilt of the accused."* (Emphasis supplied).

In United States v. Pannell, 178 F.2d 98 (3d Cir. 1949), the court held that in a prosecution for willfully and knowingly attempting to defeat and evade payment of income taxes, exclusion of testimony that defendant's wife who had been jointly indicted with him had entered a plea of nolo contendere was proper, since such testimony did not prove that the defendant was not also guilty.

**222**

The necessity for inconsistency between the guilt of another and the guilt of defendant is emphasized in cases in which evidence was held inadmissible that tended to show that persons other than defendant were operating a still. It was held that evidence that tended to show that someone else was operating the still would not tend to acquit the accused. McGehee v. State, 171 Ala. 19, 55 So. 159; Elmore v. State, 18 Ala.App. 492, 93 So. 306; Marshall v. State, 18 Ala.App. 526, 93 So. 380.

■ Appellant insists that there was not sufficient evidence to warrant a conviction and that the court should have granted defendant's motion for a new trial. We conclude that it was ample and sufficiently strong to justify the action of the court in overruling defendant's motion for a new trial.

We have discussed all assertions of error in appellant's brief that are purportedly supported by authorities and have considered all questions raised in the brief.

We have searched the record for any error prejudicial to defendant, including any possible error that may not have been insisted upon in appellant's brief. We find that resourceful and dedicated counsel for appellant have raised and ably argued every question that could conceivably be resolved in favor of appellant. We find no error in the record prejudicial to appellant. The judgment appealed from should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All Judges concur.