Thomas Dixon was indicted for theft in the first degree in violation of § 13A-8-3, Code of Alabama 1975. The jury found the appellant "guilty of theft in the first degree as charged in the indictment." Following a Habitual Felony Offender hearing, the appellant was sentenced to life imprisonment in the penitentiary as a habitual offender. (R. 153-155).
Donald Rose testified that he owned Skyland Equipment on Skyland Boulevard in Tuscaloosa in 1981. At the time, he owned a 1981 Massey Ferguson 255 brand farm tractor, serial number 9A 343474. The tractor had a value of $17,667.30. On July 26, 1981, the tractor was discovered missing. Neither Rose nor any of his employees gave anyone permission to remove the tractor from his premises.
Billy Yessick, a special agent with the FBI, testified that he had a conversation with the appellant on August 27, 1981. Before the conversation took place, Yessick showed the appellant a copy of his Miranda rights. When the appellant indicated he could not read, Yessick then read him his rights as well as the "waiver form". The appellant did not sign the waiver.
Yessick started asking questions and the appellant responded. The appellant stated that he, John Thomas, Elbert Thomas and Willie Ryan went to the tractor place on Skyland Boulevard, Tuscaloosa, on Sunday night, July 26, 1981. He and one of the *Page 436 
Thomases pushed the tractor out to where they could tie it to a pickup truck owned by Elbert Thomas. Once this was completed, the tractor was towed on back roads to Eutaw, Alabama. The next morning the four took the tractor to a service station operated by a man named Butch. Butch had ordered a tractor from them. When they got to the station, Butch was not there. "A big, fat man" told them to put the tractor in a shed behind the station, which they did. They then left.
When the four came back to the station Butch told them he didn't have any money and wanted them to take the tractor to a location near Knoxville, Alabama. The tractor was then taken to this location and the four returned to the station. Butch gave them $400, a battery, some battery cables and $10 worth of gas.
Immediately after Yessick finished talking to the appellant, Officer Jimmy Kuykendall of the Tuscaloosa Police Department talked to the appellant. The appellant told Kuykendall that he and three others had stolen a tractor and towed it to Eutaw, Alabama. They sold it to a man named Butch and took it to a farm on U.S. Highway 11.
The next morning the appellant accompanied Kuykendall to Eutaw. The appellant showed Kuykendall the station where they first took the tractor and the farm where they left the tractor. Kuykendall recognized the station as Jeff Spencer's shop and the farm also belonged to Jeff Spencer. The tractor was later recovered.
 I
The appellant's first contention on appeal is that the testimonies of Yessick and Kuykendall concerning the appellant's statements were improperly admitted into evidence. The appellant asserts the State failed to show that the statements were voluntarily made.
Yessick testified that, after he read the appellant hisMiranda rights and the waiver, the appellant said he understood what was read to him. Yessick stated no threats, promises, hope of rewards or other inducements were made or offered to the appellant to obtain his statement.
Kuykendall indicated that he was present when another Tuscaloosa Police Officer read the appellant, Dixon, his rights when he was arrested earlier in the night in which he gave his statement. The appellant stated he understood those rights. When Kuykendall talked to the appellant after Yessick finished, he did not again read him his Miranda rights. Kuykendall identified himself to the appellant and said he wanted to talk to him about the theft of the tractor. No threats, promises, hope of rewards or other inducements were made to the appellant in order to obtain this statement.
A thorough review of the record reveals that the appellant voluntarily, knowingly and understandingly waived his Miranda
rights and made a voluntary statement to Yessick and Kuykendall. There was no evidence presented that the appellant's inability to read rendered his statements involuntary. The Miranda rights and waiver were read to the appellant on two occasions and each time the appellant indicated he understood those rights. Although there was some evidence that the appellant may have been drinking prior to giving his statements, there is no evidence that the appellant was intoxicated to the point which would render his statement involuntary.
The appellant contends Kuykendall should have read the appellant his rights before he talked to him because Yessick was a federal agent. This argument is without merit. First of all, the appellant concedes that it is not necessary thatMiranda warnings be given before each interrogation. Crawfordv. State, 377 So.2d 145 (Ala.Crim.App. 1979). Secondly, Kuykendall was present when the appellant was given his Miranda
warnings by a Tuscaloosa Police Officer prior to his making his statement.
The appellant's statements were, therefore, properly admitted into evidence. *Page 437 
 II
During the cross-examination of Yessick the following occurred:
 "Q. Now, Mr. Yessick, you testified in this case previously to the fact that the Defendant did tell you in that conversation that he was drunk on the night that the theft of the tractor occurred.
"A. Okay. I don't — (interrupted).
 "THE COURT: Let the witness see what you're reading from please, sir.
 "Q. All right. I'll ask you to look at this testimony and see if this is not what you testified to.
 "A. (Examining transcript.) That's what I testified to. He could have been — He could have told me he was drunk, yes. I don't recall that. I remember John Thomas, one of the other fellows, telling me he was passed out and didn't know anything about it.
 "Q. Sir, but the positive statement that you made that — (interrupted).
"A. Uh-huh.
 "Q. — the Defendant did tell you that he was highly intoxicated that night, you did testify to that in this Court, did you not, sir?
 "A. That's what it says here and I did testify to that, yes.
"Q. All right, sir.
 "THE COURT: By `in this Court,' you're talking about in Tuscaloosa, right?
"MR. HENDRIX: Tuscaloosa County.
 "Q. Now, I'll ask you if you did not testify in response to this question: `Did the Defendant, Thomas Dixon, ever tell you in any conversation that you had with him that he was drunk on the night that the theft of the tractor occurred?' And you answered: `I think he told me he was drunk. He said he had been drinking.' And then in response to the question: `Did you say he was awake or passed out at the time the tractor was actually taken?' `He told me what happened. Now, whether he said he was passed out or not during the time the tractor was taken I do not recall that.' Now, further on you replied — I believe you made the statements, `I do —' (interrupted).
 "MR. STEVENSON: Judge, at this time, we're going to enter an objection.
 "THE COURT: Sustained to the form. You're not allowing the witness to answer and if it's impeachable he's entitled to see it.
 "Q. Yes, sir. I'll ask you if you made these — made this following statement, sir, on that occasion starting there.
 "A. (Reading transcript). I would say I made this statement when I testified, yes.
 "Q. All right, sir. Would you mind reading that to the jury, please.
 "A. `I do recall him telling me that he didn't recall the specific incidents, that he was drunk, and he was with them when it occurred and he told me what happened.'
 "Q. But you did testify to that on another occasion in Circuit Court of Tuscaloosa County, Alabama?
"A. Yes.
 "Q. And those statements that you testified there were true?
"A. Yes.
 "Q. Now, is there any other statements that he made to you in that conversation that you haven't told the jury?
"A. I don't recall, sir.
 "Q. But you do recall now, since I've refreshed your recollection, that he did say that he was drunk and didn't even remember the specific instances that happened?
 "A. I don't recall specifically at this point him telling me he was drunk but if I testified to that, evidentally that's what I recalled at that time.
 "Q. And that was much fresher than your recollection today, was it not?
"A. It certainly was, yes, sir.
 "Q. And the statement, sir, that you have there, `I do recall him telling me that he didn't recall the specific incident, that he was drunk and he was there with them when it occurred.' Now, that's — that's what you said actually he told you? *Page 438 
"A. Can I see the question before that?
"Q. (Supplying transcript.)
 "A. I'm sure I testified to this at the time of the trial.
 "MR. HENDRIX: Now, we object and ask for a mistrial, Your Honor.
"THE COURT: For what?
"MR. HENDRIX: He referred to another trial.
"THE COURT: Overruled.
 "MR. HENDRIX: We except." (R. 36-39) (Emphasis added).
The appellant now contends that the trial judge should have declared a mistrial due to Yessick's reference concerning another trial.
 "A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby. Boutwell v. State, 279 Ala. 176, 183 So.2d 774
(1966); Aldridge v. State, 278 Ala. 470, 179 So.2d 51
(1965); Buford v. State, 214 Ala. 457, 108 So. 74
(1926); Barber v. State, 151 Ala. 56, 43 So. 808
(1907). `It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice.' Aldridge, 278 Ala. at 474, 179 So.2d at 54; Jackson v. State, 38 Ala. App. 114, 116, 78 So.2d 665, cert. denied, 262 Ala. 702, 78 So.2d 667 (1955). This is not a situation where a defendant merely remained silent and permitted error to occur. Turner v. State, 54 Ala. App. 467, 309 So.2d 503 (1975)."
Murrell v. State, 377 So.2d 1102, 1105 (Ala.Crim.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
It seems clear from the above emphasized portions of the transcript that defense counsel was inviting error by his questions concerning Yessick's prior testimony. Therefore, the trial judge properly denied the appellant's motion for a mistrial. See Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967).
 III
The appellant asserts that four of his five prior convictions, which were used to enhance his punishment under the Habitual Felony Offender Act, were not properly proven. Certified copies of all five of these convictions were admitted into evidence. On each of those convictions the records indicate that the appellant was represented by counsel. Therefore, those convictions were properly used to enhance the appellant's punishment.
 IV
The appellant claims the State failed to present sufficient evidence to sustain his conviction. The facts of this case clearly indicate that there was sufficient evidence presented at trial from which the jury could conclude, by fair inference, that the appellant was guilty of theft in the first degree beyond a reasonable doubt. Crowell v. State, 389 So.2d 545
(Ala.Crim.App. 1980); Pickens v. State, 447 So.2d 867
(Ala.Crim.App. 1984); Kelley v. State, 453 So.2d 1344
(Ala.Crim.App. 1984) and Fuller v. State, 472 So.2d 452
(Ala.Crim.App. 1985).
This record is free of error. This judgment is, therefore, affirmed.
AFFIRMED.
All Judges concur.