BOWEN, Presiding Judge.
Joe Curtis Rowe, the appellant, was convicted of the unlawful possession of cocaine and was sentenced to five years’ imprisonment. On this direct appeal from that conviction, the appellant claims a violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987).
*1211 I.
The jury venire contained 31 members, 9 of whom were black. The prosecution used 7 of its 10 peremptory strikes against black veniremembers. Two members of the jury were black. The trial court stated that the black population in the county was “something like” 35% or 40%. R. 16.
Defense counsel, in making his Batson objection, requested the trial court to take “judicial notice of the fact that this seems to be a pattern of the District Attorney’s Office in striking blacks from the jury.” R. 4. The trial court responded that “the District Attorney’s Office, in recent years at least since Batson became the law, has bent over backwards in this circuit to comply with Batson. ... And a pattern of no discrimination is all that I can discern in the circuit.” R. 4-5.
However, the trial court requested the prosecutor to state the reasons for his strikes of black veniremembers, and the prosecutor gave the following reasons:
1. Veniremember W.C. stated on voir dire that he “had family members that had been charged with drug crimes.” He indicated that he was related to three individuals, whom the prosecutor identified by name, who were “people that we’ve prosecuted here in this county for the sale of marijuana and other drugs.” R. 8.
2. Veniremember T.F. stated on voir dire that she was related to a person the district attorney had prosecuted for sale of cocaine. R. 9-10.
3. Veniremember W.B. said “[tjhat he knew the defendant.” R. 11. When defense counsel stated that if the appellant was a drug dealer as the State alleged, then the State “would want people on the jury that knew him as opposed to people that didn’t know him,” the trial court responded that he thought that “either side could strike reasonably based on somebody knowing him. I think that’s a perfectly good reason. I’m not going to analyze their motives.” R. 12.
4. Veniremember M.G. “is the brother-in-law of the infamous L.H., and his wife works for L.H..” R. 12. In response, the trial court stated: “I know who L.H. is and know that that’s a good strike.” R. 12-13.
5. Veniremember E.H. “replied in voir dire that he knew S.H., was related to S. And we have prosecuted him for burglaries and thefts here in this county.” R. 13.
6. Veniremember J.M. responded on voir dire in another case that he knew and was related to three people that the prosecutor had prosecuted,' “one for sexual abuse in the second degree and two of them for three counts of insufficient worthless checks.” R. 14-15.
7. Veniremember A.S. “was related to L.S.M. who [the prosecutor] believ[ed] last term [she] prosecuted for burglary and theft here in Dadeville.” R. 15.
We find these reasons to be race-neutral.
Strikes based on the veniremember’s relationship to or acquaintance with the defendant or with the defendant’s witnesses have generally been upheld. E.g., Ex parte Lynn, 543 So.2d 709, 711 (Ala.1988) (one venire-member’s “husband was related to the defendant”; another veniremember was “a classmate of the co-defendant” and had “a child by the co-defendant’s brother”), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989); Wilsher v. State, 611 So.2d 1175, 1182 (Ala.Cr.App.1992) (veniremembers acquainted with both defendant and defense witnesses; court also noted the correlation between this reason and a challenge for cause based on the veniremember’s acquaintance or relationship with a party or witness); Knight v. State, 622 So.2d 426 (Ala.Cr.App.1992) (veniremember “had known the [defendant] for many years” and the defendant “had asked her for a date on a couple of occasions”); Williams v. State, [Ms. CR-89-633, March 27,1992], 1992 WL 92491 (Ala.Cr.App. 1992) (veniremember knew or was related to defense witness), affirmed, [Ms. 1911047, April 2, 1993], 1993 WL 93983 (Ala.1993); Strother v. State, 587 So.2d 1243, 1247 (Ala. Cr.App.1991) (veniremembers acquainted with defendant); Bass v. State, 585 So.2d 225, 237 (Ala.Cr.App.1991) (veniremember acquainted with defense witness); Davis v. State, 555 So.2d 309, 314 (Ala.Cr.App.1989) (veniremember acquainted with defense witness). “Acquaintance with a defendant or his family has been previously held to be a *1212 race-neutral reason for a strike. Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989).” Jackson v. State, [Ms. 4 Div. 388, August 21, 1992], 1992 WL 202656 (Ala.Cr.App.1992), remanded on related grounds, [Ms. 1920376, June 11, 1993], 1993 WL 196268 (Ala.1993). See also Avery v. State, 545 So.2d 123, 126 (Ala.Cr.App.1988).
A veniremember’s involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember. E.g., Wilsher v. State, 611 So.2d 1175, 1181 (Ala.Cr.App.1992) (one veniremember had been “charged with or convicted of crimes in the past”; another veniremember “had been charged with assault, third degree, and ... D.O.C.”); Whittlesey v. State, 586 So.2d 31, 32 (Ala.Cr.App. 1991) (veniremember had been investigated for rape although grand jury ultimately “no billed” the ease); Avery v. State, 545 So.2d 123, 126 (Ala.Cr.App.1988) (veniremember was a “defendant in a pending criminal case”). “This connection with or suspicion of criminal activity includes the juror in question, as well as close relatives and friends of the juror.” Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App.1991). See also Newman v. State, [Ms. 1920659, May 21, 1993], 1993 WL 167923 (Ala.1993) (deputy sheriff told the prosecutor that “just about the whole family ... has been prosecuted by our staff’); Powell v. State, 548 So.2d 590, 592-93 (Ala.Cr. App.1988), aff'd, 548 So.2d 605 (Ala.1989) (fact that juror had family members prosecuted for criminal activity is a valid race-neutral reason); Williams v. State, 611 So.2d 1119, 1122 (Ala.Cr.App.1992) (same); Whitley v. State, 607 So.2d 354, 357 (Ala.Cr.App. 1992) (same).
We find no error in the trial court’s denial of the appellant’s Batson objection.
II.
Defense counsel used all nine of his peremptory strikes to remove white venire-members. The trial court, on its own initiative, questioned defense counsel about this matter. After defense counsel admitted that he “took race into account in striking the jury because [his] client, is black” (R. 5), the trial court concluded:
“The Court specifically finds that the defendant has exercised his strikes in a racially discriminatory fashion. And, at this point in time, I’m not going to hold that against the defendant. I’m not going to grant his motion based on the fact-that he has possibly violated Batson and its requirements.” R. 6.
Although defense counsel stated that “race was only one factor that we considered among others” in striking the jury (R. 17), the trial court found to the contrary:
“I would specifically find that the defendant did, in fact, exercise his strikes in a totally racially discriminatory fashion. He used every strike to strike whites, and that very possibly created additional pressure and additional justification for the District Attorney’s Office to strike blacks. If one side is striking all of one race, if a defendant is using every strike — and I think in that regard the order of strikes would be important.” R. 17.
After determining that the State used its first, fourth, fifth, sixth, seventh, eighth, and ninth strikes against blacks, the trial court stated:
“Okay. Given the dynamics of the strike process, it’s awfully difficult for me to understand how anybody could think that they could ever determine motivation based on statistical analysis. If statistical analyses were going to be of any value at all, it seems to me that the only way anybody could make anything out of it would be to take a hundred juries struck by the District Attorney’s Office and look at the overall pattern of what had taken place in that process. Statistics might have some validity in that context, but I don’t think that an expert in statistics would opine that given all of the subjective factors that have to enter into the strike process that seven out of ten means anything against the background of nine out of nine from the defendant’s side.
“The [defendant’s] Batson motion is not well taken, and I’m really just doing all of this so that if it gets appealed the Appellate Court will have a chance to read all of that stuff and think about it a little bit. *1213 Because it’s a lot more complicated than they think it is. You can’t look in somebody’s mind about why they’re doing this stuff, and there’s not many strikes that can be justified on some ground.” R. 19-20.
Although the trial court’s failure to take action against the appellant after specifically finding that the appellant had engaged in racial discrimination in the striking of white veniremembers was error, that error was the equivalent of an invited error and does not constitute a ground for reversal.
In Owes v. State, [Ms. CR 92-481, July 9, 1993], 1993 WL 246372 (Ala.Cr.App.1993), this Court stated:
'‘Batson applies equally to strikes exercised by the prosecutor and defense counsel. Georgia v. McCollum, [ — ] U.S. [-], 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Ex parte Pilot, 607 So.2d 311 (Ala. 1992); Lemley v. State, 599 So.2d 64, 66 (Ala.Cr.App.1992). When a veniremember is excluded on the basis of race ‘the harm is the same,’ ‘[rjegardless of who invokes the discriminatory challenge.’ McCollum, [ — ] U.S. at [-], 112 S.Ct. at 2353.
“In Williams v. State, [Ms. CR 91-1259, February 12, 1993] [1993 WL 34896] (Ala. Cr.App.1993), this Court held that the principles of Batson apply to the striking of white veniremembers by the prosecution. The Alabama Supreme Court has ‘assumed,’ for purposes of responding to argument, that the safeguards of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), apply to the striking of white venirepersons. White Consolidated Indus., Inc. v. American Liberty Ins. Co., 617 So.2d 657, 659 (Ala. 1993).”
The reversal of a conviction because defense counsel struck white veniremembers in a racially discriminatory manner would allow the appellant to benefit from his own voluntary conduct.
“A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby. Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966); Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965); Buford v. State, 214 Ala. 457, 108 So. 74 (1926); Barber v. State, 151 Ala. 56, 43 So. 808 (1907). ‘It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice.’ Aldridge, 278 Ala. at 474,179 So.2d at 54; Jackson v. State, 38 Ala.App. 114, 116, 78 So.2d 665, cert. denied, 262 Ala. 702, 78 So.2d 667 (1955). This is not a situation where a defendant merely remained silent and permitted error to occur. Turner v. State, 54 Ala.App. 467, 309 So.2d 503 (1975).”
Murrell v. State, 377 So.2d 1102, 1105 (Ala. Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979). This Court will not reverse a judgment because of “invited error.” Tuscaloosa County v. Jim Thomas Forestry Consultants, Inc., 613 So.2d 322, 329 (Ala.1992).
The judgment of the circuit court is affirmed.
Affirmed.
All Judges concur.