The appellant was indicted for the robbery of one Clarise Knabe by taking some $261.85 in currency from her person and by putting her in fear, etc. The jury found the appellant guilty as charged and fixed punishment at eighteen years imprisonment. The trial judge set sentence in accordance with the verdict, ruling that the sentence be served concurrently with a life sentence for murder, which grew out of the same incident. SeeMiles v. State, Ala.Cr.App., 343 So.2d 801 (1977), cert. denied, Ala., 343 So.2d 806 (1977).
To the indictment the appellant filed a plea of autrefois convict. In support thereof, counsel argued that the same evidence used in the prior murder conviction would be used in the robbery prosecution. The trial judge rejected the plea ruling that the intent to rob and the intent to murder are sufficiently distinct to support separate prosecutions and separate convictions. No issue is made of the trial judge's ruling in this matter. See generally, Clift v. State, Ala.,352 So.2d 838 (1977).
Gus Constance, owner of the Twenty-Ten Lounge in Birmingham, testified that, on the night of November 3, 1975, he returned to the bar about 11:15 p.m. to assist his employee, Clarise Knabe, in closing the bar for the night. Upon arriving, Mr. Constance found the front door to the bar locked from the inside. Peering through the window, Mr. Constance could see that the television set and game machines were still operating. Mr. Constance's shouts demanding to be admitted went unanswered. Mr. Constance gained entrance to the bar through the back door, which he found open. Upon entering, Mr. Constance noted that two wallets were on top of the bar, that Ms. Knabe's purse was on the floor behind the bar along with several cartons of cigarettes, and that the contents of the cash register had been substantially depleted. Mr. Constance then contacted the police. *Page 348 
Alma Vest testified that she was at the Twenty-Ten Lounge in Birmingham on November 3, 1975, from approximately 9:15 p.m. until 11:00 p.m. Ms. Vest recalled seeing the appellant and a person she later came to know as Samuel Yarber talking to one Ronnie White, whom she had known previously. Ms. Vest stated that Mr. White arrived about 10:15 p.m. The appellant and Mr. Yarber arrived shortly thereafter. Ms. Vest recalled that a football game was being shown on the large television set for the patrons of the bar. At the conclusion of the football game, Ms. Vest and her companion left the bar. The remaining people in the bar were the appellant, Mr. Yarber, Mr. White, and Ms. Knabe.
Birmingham Police Evidence Technician Darnell Guyer testified that he arrived at the Twenty-Ten Lounge on the night in question at approximately 11:55 p.m. During the course of his investigation, Officer Guyer made several fingerprint lifts from various surfaces in the bar and recorded the date, time, and location of the original fingerprints. The proper predicate having been laid, the trial judge admitted two fingerprint lifts taken from the same drinking glass found on the bar at the Twenty-Ten Lounge.
Officer Guyer testified that his investigation also uncovered a spent .38 caliber bullet retrieved from the wall over the bar. Officer Guyer identified the bullet from the markings that he made on its sealed container when he recovered the bullet from the wall. Officer Guyer delivered the spent bullet in its container to Birmingham Police Sergeant Higgins. The trial judge admitted this bullet into evidence.
Through the testimony of County Jailer Dan Prater, the State introduced a complete set of the appellant's fingerprints taken when he was admitted to the Jefferson County Jail after his arrest. The trial judge admitted this exhibit into evidence.
Sandra Triplett testified that she was employed as a fingerprint technician with the Birmingham Police Department. Ms. Triplett was shown to possess the requisite qualifications and expertise to express her opinion as to latent fingerprint comparison and identification. Ms. Triplett stated that she examined the fingerprint lifts in evidence and compared them with the known fingerprints of the appellant. Based on her examination and her experience, the fingerprint lifts taken from the drinking glass found on the bar by Officer Guyer matched the known fingerprints of the appellant (R. p. 62). On cross-examination Ms. Triplett testified that none of the latent fingerprint lifts that she examined matched the known fingerprints of Samuel Yarber.
James Howell, evidence technician with the Jefferson County Sheriff's Department, testified that, on the morning of November 4, 1975, he and Sergeant Jones went to an area near Bessemer via Highway 150 to assist in the investigation of a crime scene where the bodies of Clarise Knabe and Ronald White had been discovered. During the course of his investigation, Officer Howell took several photographs, made diagrams showing the bodies' location, and recovered five spent bullets from the ground underneath the place where the bodies had lain. Officer Howell delivered the spent bullets in substantially the same condition in which they were found to Sergeant David Higgins of the Birmingham Police Department. Officer Howell stated that the bodies were found approximately 200 feet from Highway 150 and were visible to passers-by.
Sergeant David Higgins testified that he was employed in the Scientific Investigation Bureau of the Birmingham Police Department. Sergeant Higgins was properly qualified as an expert in the field of firearms identification. Sergeant Higgins participated in the investigation on November 4, 1975, of the discovery of two dead bodies off Highway 150 near Bessemer. Sergeant Higgins was present during the performance of an autopsy by Jay Glass on the two bodies at Cooper Green Hospital later the same day. During the autopsy, Sergeant Higgins received several spent bullets removed from the victims' bodies. Sergeant Higgins compared the bullets removed from the victims' bodies with the bullet recovered by Officer Guyer from the wall of the *Page 349 
Twenty-Ten Lounge and concluded that they were fired from the same .38 caliber weapon (R. p. 88).
Sergeant Higgins also identified a .38 caliber pistol given to him by Officer Howell. Based upon testfirings conducted on this weapon, Sergeant Higgins concluded that the pistol marked as State's Exhibit Fourteen fired the bullets recovered from the victims' bodies and from the wall of the Twenty-Ten Lounge (R. p. 91).
Samuel Yarber, the appellant's alleged accomplice, was called to the stand for the State. Mr. Yarber was represented in court by Mr. Fred Erben who explained that Mr. Yarber at that time had two appeals pending from convictions arising out of the same incident as the instant prosecution. In a statement made prior to Mr. Yarber's taking the stand, Mr. Erben stated that his client desired to say nothing in court, thus exercising his Fifth Amendment privilege (R. p. 95).
The State moved to have Mr. Yarber declared unavailable for purposes of admission of a transcript of testimony he gave at a prior proceeding. After hearing argument from both appellant's counsel and Mr. Yarber's counsel, the trial judge granted the State's motion and admitted the testimony over objection from the defense. The issues on this appeal concern whether or not the trial judge's admission into evidence of Yarber's preliminary hearing testimony was proper. For purposes of brevity, we do not herein re-state the gruesome facts of the episode as garnered from Yarber's testimony. For these details, see Miles v. State, supra. Suffice it to say that Yarber, in the transcript of his preliminary hearing testimony, and the appellant, in his testimony from the stand, each accused the other of primary responsibility for the acts committed on November 3, 1975. The appellant's account of the facts was the only testimony presented by the defense. There was no motion to exclude the State's evidence nor was there a request for the affirmative charge.
 I
The appellant asserts that his right to confront the witnesses against him, guaranteed to him by the Sixth Amendment to the United States Constitution, was violated by the trial judge's admission into evidence at trial of Yarber's preliminary hearing testimony. However, the appellant's contention lacks support, both from the applicable law and from the facts of the case.
The appellant relies on two cases involving the admission at trial of a transcript of testimony given at a prior preliminary hearing. In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065,13 L.Ed.2d 923 (1965), the United States Supreme Court held that the right to confront adverse witnesses, guaranteed by the Sixth Amendment, applied to the states via the Fourteenth Amendment, and that, under the facts of that case, the petitioner therein was denied that right. A key factor in thePointer court's holding was the fact that the defendant had not been represented by counsel at the preliminary hearing and had no opportunity to cross-examine the witness whose testimony was being introduced at trial.
 "The case before us would be quite a different one had [the witness'] statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." Pointer v. Texas, supra, at 407, 85 S.Ct. at 1069.
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930,26 L.Ed.2d 489 (1970), the United States Supreme Court vacated the judgment of the California Supreme Court which had ruled the admission of a transcript of testimony given at a prior preliminary hearing an unconstitutional violation of the Sixth Amendment right to confront adverse witnesses. In Green, the witness' testimony at trial was markedly different from the recorded testimony at the preliminary hearing. In allowing the preliminary hearing testimony to be used, the court found sufficient indicia of reliability in the circumstances surrounding the taking of the preliminary hearing testimony to *Page 350 
satisfy the requirements of traditional hearsay exceptions wholly independent of any issues involving possible violation of the Confrontation Clause. These indicia of reliability include the fact that the witness was under oath at the preliminary hearing, which was conducted before a judicial tribunal and he was subject to cross-examination by the defendant who was represented by competent counsel.
In the instant case, Yarber was under oath at the preliminary hearing. The appellant was represented by competent counsel, who was afforded ample opportunity for cross-examination before a judicial tribunal. The admission of the transcript of Yarber's prior testimony as a result of his refusal to testify complied in every respect with the requirements in Green, supra.
The law of this jurisdiction further supports the conclusion that admission of Yarber's testimony was proper. In Miles v.State, Ala.Cr.App., 343 So.2d 801, cert. denied, Ala.,343 So.2d 806 (1977), this court ruled, under facts almost identical to those herein presented, that admission of Yarber's preliminary hearing testimony was proper.
In Bridges v. State, 26 Ala. App. 1, 152 So. 51 (1933), this court stated:
 "The witness . . ., when called, refused to testify, claiming his constitutional right not to be forced to give evidence which would tend to incriminate him. He thereby placed himself where he was not available to the state to be used as a witness. Thereupon, over the objection and exception of defendant, the state was allowed to make preliminary proof that this witness had been examined and cross-examined as a witness for the state on the former trial of this same case in the circuit court of Jefferson county, and over objection and exception of defendant the state was then allowed to read to the jury the testimony of the witness . . . given on such former trial. This is not now an open question in this state, and while there are some decisions to the contrary, this court and the Supreme Court have spoken on the question and we see no reason to reopen the subject. The witness . . . having testified on a former trial of this case, with full opportunity for cross-examination and when called to testify on this trial he rendered himself incompetent as a witness without fault on the part of the state, the trial court properly allowed his testimony on the former trial to be read in evidence." [Citations omitted]
Therefore, we find that admission of Yarber's preliminary hearing testimony was proper under the unavailability hearsay exception. See 5 Wigmore, §§ 1408, 1409. Under the rationale ofCalifornia v. Green, supra, we further find no constitutional infirmity in the trial judge's ruling.
 II
The appellant next contends that the unavailability of the witness was the fault of the State and that the State failed to show affirmatively absence of fault associated therewith. The basis for the allegation that Yarber's unavailability was the fault of the State is the unsupported assertion in brief that Yarber's subsequent prosecution was a violation of an alleged grant of immunity. Moreover, nothing in the record supports the contention that Yarber was given a grant of immunity in exchange for his preliminary hearing testimony. This court cannot consider statements contained in the appellant's brief as to circumstances not reflected by the appeal record. Edwardsv. State, 287 Ala. 588, 253 So.2d 513 (1971); Chambers v.State, Ala.Cr.App., 356 So.2d 767 (1978).
The state is not required to show affirmatively that it was free from fault associated with the witness' unavailability. A sufficient predicate for a determination of unavailability is laid when the state shows it exercised due diligence in procuring the witness' presence at trial. Williams v. Calloway,281 Ala. 249, 201 So.2d 506 (1967). Here the state produced Yarber at trial. The witness' claim of the Fifth Amendment privilege was the basis for the determination of unavailability. The question *Page 351 
of the sufficiency of the proof of the predicate is addressed to the sound discretion of the trial judge. Washington v. State,274 Ala. 386, 148 So.2d 206 (1962).
 III
The appellant finally contends that the state did not lay the proper predicate for the introduction of the preliminary hearing testimony. In Hardy v. State, 53 Ala. App. 75,297 So.2d 399 (1974), this court stated that in order for such testimony to be admissible, it must appear that the testimony was given . . .
 "(1) [U]nder oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (3) under circumstance affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination, and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible." [Citations omitted]
See generally, Gamble, McElroy's Alabama Evidence, § 245.07 (1), 3d Ed. (1977), and authorities cited.
In the instant case, it is clear that the witness Yarber was under oath in the Jefferson County Criminal Court. The appellant's counsel conducted a lengthy cross-examination of the witness in a case which involved the same parties and similar issues as the instant case. The live testimony of the witness was not feasible by virtue of his exercising his right to remain silent. We find, therefore, that the requirements set out in Hardy, supra, were met. The state therefore laid the proper predicate for admission of the preliminary hearing transcript.
For the reasons hereinabove stated, and after careful consideration of the record on this appeal, we find that this case is due to be and is hereby
AFFIRMED.
All the Judges concur.