[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1149 
Appellant was put to trial upon a two-count indictment which, omitting the formal parts, reads as follows:
 "Count I: The Grand Jury of said County charge that, before the finding of this indictment, Suzette Allen, whose name is to the Grand Jury otherwise unknown, did, unlawfully, wilfully and feloniously possess cocaine contrary to the provisions of Act 1407, Section 401 (a), Regular Session of the Legislature of Alabama, 1971.
 "Count II: The Grand Jury of said County further charge that, before the finding of this indictment, Suzette Allen, whose name is to the Grand Jury otherwise unknown, did, unlawfully, wilfully and feloniously possess marijuana contrary to the provisions of Act 1407, Section 401 (a), Regular Session of the Legislature of Alabama, 1971, against the peace and dignity of the State of Alabama."
Throughout the trial proceedings appellant was represented by counsel of her choice and at arraignment pleaded not guilty. The jury found her guilty under both counts of the indictment. In finding her guilty under Count II of the indictment the verdict reads: "We, the jury, find the defendant guilty of possession of marijuana for her personal use and refuse to assess a fine."
The trial court sentenced appellant to two years imprisonment in the penitentiary, suspended the sentence and placed her on five years probation conditioned upon her future good behavior. The Court further ordered that she serve three months in the County jail and pay a $1,000.00 fine and court costs. Another condition of her probation was that upon release from the jail sentence that she find a full time job. After sentence was imposed appellant gave notice of appeal and she is represented on this appeal by trial counsel.
The evidence was in sharp conflict and only a jury could unscramble the conflicting testimony and arrive at a verdict.
At the conclusion of the State's case appellant made a motion to exclude the evidence on the ground the State had failed to make out a case against the defendant on reliable, relevant, admissible evidence. The motion to exclude the State's evidence was overruled and denied by the trial court.
This is a search warrant case and appellant made a motion to suppress the evidence obtained pursuant to the search on the ground that the search warrant was not properly executed, was not properly served, and was not properly carried out, and that the fruits thereof would not be admissible. The Court overruled the motion to suppress after a lengthy hearing out of the presence of the jury.
The affidavit leading to the issuance of the search warrant reads as follows:
 "State of Alabama ) City of Montgomery ) Affidavit in Support Montgomery County ) of a Search Warrant
 "Before me, the honorable Newman C. Sankey, Judge of the District Court of Montgomery County, Montgomery, Alabama, the undersigned being first duly sworn deposes and says:
 "That they are Police Officers in and for the City of Montgomery, Alabama and that they have reason to believe, probable cause to believe, and in fact do believe that Cocaine, a controlled substance, or *Page 1150 
any compound mixture or substance containing Cocaine is being kept, stored, and concealed in the residence of Suzette Allen located at 2409 East Sixth Street in Oak Park Montgomery, Alabama. This is in violation of the Alabama Uniform Controlled Substance Act of 1971.
 "And the facts tending to establish the foregoing grounds for issuance of a day time search warrant are as follows:
 "On or about March 31, 1978, Affiants C.M. Armstrong and J.A. Dorrill met in person with a confidential and reliable source hereinafter referred to as `A'. `A' stated to the affiants in person that he had personally observed a quantity of Cocaine within the residence of Suzette Allen located at 2409 East Sixth Street in Oak Park, Montgomery, Alabama within the past two days. Upon checking the February, 1978 edition of the Montgomery Telephone Directory, Affiant Armstrong found a Suzette Allen listed with the address 2409 East Sixth Street and telephone number 265-3736. Upon checking with Alabama Power Company, Affiant Armstrong found that the power for the residence of 2409 East Sixth Street in Oak Park in Montgomery, Alabama is listed in the name of Suzette Allen.
 "Further probable cause being that within the past two weeks, the affiants C.M. Armstrong and J.A. Dorrill have personally observed on more than one occasion numerous persons going and coming from the residence of Suzette Allen located at 2409 East Sixth Street Oak Park, Montgomery, Alabama. Those people would only stay for short time and then leave that residence.
 "Further probable cause being that on March 15, 1978, affiant C.M. Armstrong went to the residence of Suzette Allen located at 2409 East Sixth Street Oak Park Montgomery, Alabama, in an attempt to make an undercover buy of one gram of Cocaine from Suzette Allen. Upon arriving, affiant Armstrong talked with a white female who identified herself as Suzette Allen. The white female who identified herself as Suzette Allen agreed to sell affiant Armstrong one gram of Cocaine for ninety (90) dollars. This sale was set to be made one hour after affiant Armstrong's first contact with the white female. During that one hour period, Suzette Allen learned that Armstrong was a police officer and did not sell to him.
 "Further probable cause being that there are numerous reports on file in the office of the Narcotics and Dangerous Drugs Detail of the Montgomery Police Department regarding the drug activities of Suzette Allen.
 "Source `A' has proven reliable in the past in that on or about December 10, 1977 affiant Armstrong received information from `A' in person that resulted in the arrest of Bobby Lee Reynolds for sale of amphetamine and possession of amphetamine and Connie Marie Blackwell for Felony Possession of Marihuana and Possession of amphetamine. Both Reynolds and Blackwell have been indicted by the Montgomery County Grand Jury and are currently awaiting trial in Montgomery County Circuit Court.
 "Source `A' has further proven reliable in that `A' has given affiants Armstrong and Dorrill information on other drug activity that is currently under investigation with arrest pending.
 "This affidavit is based upon facts and personal observations of the affiants C.M. Armstrong and J.A. Dorrill and is made for the purpose of securing a day time search warrant for the residence of Suzette Allen located at 2409 East Sixth Street Oak Park in Montgomery, Alabama.
"Sworn to before me this the 1st day of April 1978.
 /s/ C.M. Armstrong /s/ J.A. Dorrill
C.M. Armstrong, Police J.A. Dorrill, Police Officer Officer Narcotics and Dangerous Narcotics and Dangerous Drugs Detail Drugs Detail Montgomery Police Montgomery Police Department Department
 /s/ Newman C. Sankey
Newman C. Sankey, Judge District Court Montgomery County, Alabama" *Page 1151 
This identical affidavit was approved by this court in a unanimous opinion written by Judge Bowen in Francis E. Travisv. State, 381 So.2d 97, which was released on December 4, 1979. In this opinion Judge Bowen held:
 "This affidavit is sufficient to support a finding of probable cause to search the described residence despite the defendant's several grounds of objection. The affidavit satisfies both the basis of knowledge test and the veracity test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
 "The affidavit contains an express statement of time of the occurrence of the facts relied upon, i.e., within the past two days from March 31, 1978. A statement by the affiant that his informant observed the alleged offense `within' a certain period of time is sufficiently clear and definite. 100 A.L.R.2d 525, Section 5 (c) (1965). The affidavit need not state the exact time the informant observed the events relied upon to show probable cause.
 "The informant observed cocaine in the house `within the past two days' from March 31, 1978. The search warrant was obtained and executed on April 1, 1978. The information contained in the affidavit is not too remote.
 "`The requirement that an affidavit for a search warrant state the time of the occurrence of the facts relied upon is based on the necessity that there exist at the time the warrant is issued probable cause for believing that the facts relied upon still continue to exist. Simultaneity is, of course, normally impossible, but just how long a time may be permitted to elapse without destroying the basis for a reasonable belief as to the continuance of the situation set forth in the affidavit will vary according to the facts of the individual case. About all that may be stated by way of a general rule is that the courts will require that no more than a "reasonable" time have elapsed, the nearer the time at which the facts occurred is to the time when the affidavit was made, the more probable it being that the affidavit will be held to justify a conclusion of probable cause.' 100 A.L.R.2d 525, Section 6."
 "The informant need not state the quantity of controlled substance he observed. `(A)n assertion by an informant that he saw illegal drugs or the like at a certain place is regularly accepted without any showing as to how the informant was able to identify the substance.' W. LaFave, 1 Search and Seizure 539 (1978).
 "The affidavit contains a sufficient statement of facts from which either the inherent credibility of the informant or the reliability of his information on this particular occasion could be determined. Aguilar. While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a factual basis for crediting the report of an unnamed informant, Aguilar, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the affidavit in the present case contains an ample factual basis for believing the informant."
Allan Raymond Adair, a drug identification expert with the State Department of Forensic Science, whose qualifications were admitted, testified that, on April 5, 1978, he received from Detective Joe Dorrill numerous articles of evidence to analyze and identify in this case. The following state's exhibits were identified by Mr. Adair:
 No. 1 — one clear plastic bag containing plant material identified as marijuana weighing 2.9 grams.
 No. 2 — a small bag containing white residue was inconclusive for identification.
 No. 3 — one paperweight which was negative for a controlled substance.
 No. 4 — two syringes that were negative for a controlled substance.
 No. 5 — three clear plastic ziplock bags containing greenish brown plant material identified as marijuana weighing 303 grams.
 No. 6 — one silver metal spoon containing a plug of cotton-like material and a white residue identified as cocaine. *Page 1152 
 No. 7 — one clear plastic bag containing small amount of plant material identified as marijuana weighing .8 grams.
 No. 8 — one clear plastic bag containing plant material consisting primarily of seeds; plant material was identified as marijuana, total weight was 100.7 grams.
 No. 9 — one clear plastic bag containing greenish brown plant material identified as marijuana weighing 8.2 grams.
 No. 10 — four hand rolled cigarette butts in which trace amounts of marijuana were identified.
 No. 11 — three hand rolled cigarette butts in which trace amounts of marijuana were identified.
 No. 12 — one hand rolled cigarette butt in which a trace amount of marijuana was identified.
 No. 13 — one hand rolled cigarette butt in which a trace amount of marijuana was identified.
 No. 14 — one hand rolled cigarette butt in which a trace amount of marijuana was identified.
Mr. Adair testified that all of the exhibits have been continuously in his possession except for numbers one through six. On October 18, 1978, he relinquished possession of numbers one through six to the court in connection with another case growing out of the same search and regained possession of the exhibits on the morning of the appellant's trial. He testified that there had been no change in the condition of the exhibits.
Joseph Dorrill testified that, on April 1, 1978, he was employed as a narcotics officer with the Montgomery Police Department. On that date he and other members of the narcotics squad, along with Deputy Dave Bryant of the Montgomery Sheriff's Office, executed a search warrant on the residence of the appellant located at 2409 East 6th Street, Montgomery. At approximately 5:51 a.m. Officer Dorrill went to the front door of the appellant's home. He knocked. several times, stated that he was a police officer and had a search warrant for the residence. After a short pause this sequence was repeated two more times. When there was no response to the warning and movement was detected in the house, the officers gained entry to the house by forcing the front door open. In the meantime Officer C.M. Armstrong covered the rear of the house.
As they entered the house the appellant was standing directly behind the front door. Besides the appellant, the other occupants of the house were later identified to be Teresa Robinson, sister of the appellant, David Barron, and Frank Travis. They were gathered together and seated at the kitchen table where the search warrant was read to the appellant by Deputy Bryant.
Officer Dorrill was appointed the evidence technician for the search. All evidence found in the house was inventoried, sealed, and turned over to Mr. Adair at the State's Toxicologist's Office by Officer Dorrill. The evidence was kept in Officer Dorrill's locker at the police department for approximately two days before being turned over to Mr. Adair. Officer Dorrill testified that state's exhibits one through fourteen were found in the house.
Officer Dorrill also testified that he and Officer Armstrong had set up surveillance at the appellant's house approximately three weeks before the search warrant was executed. They watched the house from a parked automobile during the afternoons.
James L. Tender, a narcotics officer with the Montgomery Police Department, testified that he participated in the search of the appellant's residence. He and Officer Armstrong were stationed at the back of the house before entry. After entry was made through the front door they caught Frank Travis attempting to flee out the back door. Officer Tender searched Frank Travis and found on his person "hash" oil and a white powder residue in a plastic container. When the house was secured all the occupants were taken to the kitchen area. All evidence recovered was turned over to evidence technician, Officer Dorrill.
David Green, an officer with the Montgomery Police Department, testified that he participated in the search of the appellant's *Page 1153 
house. He testified that, after he entered the front door he saw Frank Travis being escorted from the back of the house by Officers Tender and Armstrong.
Officer Green was appointed custody officer and retained custody of the suspects in the house during the search. He was later relieved by another officer and joined in the search. He testified that he found the following items of evidence:
 1) a pair of white socks with blue rings around the tops, one sock contained a plastic bag with greenish-brown plant material inside, found on wooden bench in dining room area;
 2) a purse found in the living room contained the driver's license of Teresa Robinson; inside the purse was a small plastic bag containing greenish brown plant material.
 3) in the living room area found a plastic bag containing seeds, recognized them as marijuana seeds.
 4) in the living room found a brown shaving kit, inside were two hypodermic syringes or needles.
 5) found a hand rolled partially burned cigarette butt in ashtray in living room;
 6) in the back bedroom was a cardboard box covered with a few articles of clothing, inside the box were three large plastic bags containing greenish-brown plant material.
All the evidence found by Officer Green was turned over to the evidence technician, Officer Dorrill.
C.M. Armstrong testified that he was a narcotics agent with the Montgomery Police Department during the time of the investigation and arrest of the appellant. He testified that, on March 15, 1978, while acting as an undercover agent using the name "Mickey", he attempted to buy a gram of cocaine from the appellant at her residence. Officer Armstrong used the pretext that he was referred to the appellant by a mutual friend named Richard Benoit with whom he had served time in the county jail. The appellant told Officer Armstrong to phone her in one hour, that she would have the cocaine and it would cost ninety dollars. He called back in an hour and she denied knowing anything about cocaine and said she did not know where to get any. Officer Armstrong testified that, during the time he was in the appellant's house attempting to buy the cocaine, he did not see any drugs.
Officer Armstrong continued the investigation by talking to informers and sending informers to the appellant's residence. He and Officer Dorrill set up surveillance on the house. He obtained a search warrant on April 1, 1978, and participated in the execution of the warrant. He was a search officer for the house. During the search he found three partially smoked marijuana cigarettes in a kitchen drawer, four partially smoked marijuana cigarettes in a kitchen trash can, and two spoons on top of the refrigerator — one of which was later revealed to contain a residue of cocaine. He found numerous other items that were not identified as being narcotics. All the evidence uncovered by Officer Armstrong was turned over to Officer Dorrill.
Officer Armstrong testified that after he arrested the appellant, she told him that she had smoked some marijuana. She told Armstrong that she was aware that cocaine had been in the house, that Frank Travis had been selling cocaine from the house and that she used cocaine. Armstrong also testified that he found numerous letters in the house from Richard Benoit to the appellant.
Teresa Robinson testified that she was the sister of the appellant and that she was living at the house in question at the time of the raid. She also testified that Frank Travis was living in the house. She testified that she had seen Frank Travis sell marijuana and shoot up with drugs but had never told her sister. At this point the trial judge stopped the proceedings and advised the witness of her right not to incriminate herself. She left the witness stand to confer with an attorney.
After several character witnesses testified, Teresa Robinson was recalled as a witness and testified that she had marijuana in her purse. She testified that she, the *Page 1154 
appellant, Frank Travis, and David Barron had all smoked marijuana the night before the raid; that Frank Travis had furnished the marijuana. She testified that she never knew Travis to sell drugs out of the house.
Teresa also testified that Jeff Coffin told her the night that Officer Armstrong attempted to buy cocaine from appellant that Armstrong was a "narc." She testified that Jeff Coffin also told the appellant that Armstrong was a "narc." Teresa Robinson testified that she overheard the appellant tell Officer Armstrong that she could not get him any cocaine, that he could call back if he wanted to, but she could not help him.
Appellant took the witness stand and testified that she lived at 2409 East 6th Street, Oak Park, Montgomery. She testified that Lee Ann and Jeff told her that Armstrong was an undercover agent for the police. They wanted her to talk to him and see what he wanted. The appellant stated that Armstrong told her that he was referred to her by a friend of hers that he had been in jail with, and that she could get him a gram of cocaine. No price was mentioned. She laughed at him and said she could not. Armstrong insisted on calling back and she told him it would do him no good.
The appellant testified that she never sold cocaine to anybody. She admitted smoking marijuana the night before the raid. She admitted that the spoons found on top of the refrigerator were hers but that she did not know they were there and that the cocaine found in the house was not hers. She denied using cocaine.
Appellant's first contention questions the legal sufficiency of the state's evidence in proving her possession of the cocaine. She claims that the state only proved that she had constructive possession of the cocaine and nothing more. Appellant cites Temple v. State, Ala.Cr.App., 366 So.2d 740
(1978), for the proposition that when constructive possession alone is relied upon the state must also prove beyond a reasonable doubt that the accused knew of the presence of the prohibited substance. She contends that this case is on point with the Temple case and should be reversed as was that case.
The Temple case is easily distinguishable from this case. InTemple, cocaine was found in the freezer compartment of the refrigerator in the kitchen of the defendant's home. The cocaine was in a Goody's Headache Powder packet. The defendant was away from home at work when the search warrant was executed. The defendant's wife and children were at home and the wife allowed police officers to enter the home peacefully. Although other areas of the house were searched no drugs were found. There was no evidence concerning the search warrant or the basis for probable cause introduced at trial. There was evidence that workmen remodeling the defendant's home at the time did have access to the kitchen. This court in Temple
stated that there was "not one single circumstance" to connect the defendant with the cocaine other than the fact it was found in the kitchen while he was at work.
The jury in this case had the following evidence before them to consider:
 1) Officer Armstrong testified that on March 15, 1978, the appellant, at her house, agreed to sell him a gram of cocaine for ninety dollars. One hour after the agreement she denied any knowledge of cocaine.
 2) Armstrong testified that he convinced the appellant to agree to sell him cocaine by using Richard Benoit's name. Armstrong found letters in the appellant's house from Benoit to the appellant.
 3) After the "buy" fell through, the narcotics squad continued the investigation by setting up surveillance on the house, talking to informers, and sending informers into the house.
 4) A search warrant was obtained to search the appellant's house and was executed on April 1, 1978.
 5) During the execution of the search warrant Officer Dorrill had to repeatedly state that he was a peace officer with a search warrant and eventually had to force his way into the house through the front door. When he gained entry to the *Page 1155 
house the appellant was standing directly behind the front door.
 6) The appellant was in her home at the time of the search and the warrant was read to her in the kitchen.
 7) Cocaine residue was found in a spoon on top of the refrigerator midway of the top and surrounded by several kitchen articles.
8) Drugs were found in other parts of the house.
 9) Armstrong testified that the appellant admitted to him that she was aware that cocaine was in the house, that Frank Travis had been selling cocaine from the house, and that she used cocaine.
As can be seen from the above there is substantial evidence presented by the State in this case as compared to the Temple
case. Guilty knowledge can be established by the surrounding facts and circumstances. Temple, supra. Taking the circumstances as a whole, the evidence presented by the state was sufficient to establish possession of the cocaine by the appellant. Temple, supra, Easley v. State, 56 Ala. App. 102,319 So.2d 721 (1975).
Appellant's specific contention on appeal is that the search warrant was signed by the issuing judge before the affidavit was signed in violation of § 15-5-4, Code of Alabama 1975, thus a search warrant was issued before the supporting affidavit was sworn to. Section 15-5-4, supra, requires that before a search warrant can be issued the official issuing the warrant must examine the complainant on oath, take his deposition in writing, and cause the complainant to sign the deposition.
From the record, cross-examination of Officer Armstrong by the appellant's attorney:
"Q. What time did you go see Judge Sankey?
 "A. It would have been approximately one hour, one to two hours prior to the executing of the search warrant. It was the early morning hours of the first of April.
"Q. Five o'clock in the morning?
"A. It was prior to five o'clock I'm sure.
"Q. Where did you see Judge Sankey, at his home?
"A. Yes, sir, we went to his residence.
"Q. And made the affidavit at his residence?
 "A. No, sir, the affidavit and the search warrant were filled out in our office at the Montgomery Police Department.
"Q. Did you sign them down there?
"A. No, sir.
 "Q. I mean the typed affidavit with your signature on it, where was it typed?
 "A. The affidavit that is typed was typed in the office at the Police Department. The affidavit and search warrant were taken to Judge Sankey's residence where he read the affidavit and the search warrant and it was signed by himself, me and Officer Dorrill in his presence.
"Q. Who signed first?
"A. Judge Sankey.
 "MR. WHITESELL: Your Honor, I move to exclude the whole thing because he said it was sworn to before him. If he signed it first it could not have been sworn to before him.
"THE COURT: Overruled. Did he swear you?
"THE WITNESS: Yes, sir, he did.
 "THE COURT: And then in the process of signing and it all just took place together?
 "THE WITNESS: That is correct. He would sign, we would sign and each of us signed in each other's presence."
An examination of the search warrant and the affidavit reveals that the issuing judge's signature and the affiants' signatures appear on both documents. It is not clear from the testimony which document the judge signed first. Without that knowledge we cannot rule on the issue. The burden is on the appellant to establish on the record all facts necessary for this court to make an intelligent ruling. We cannot consider statements contained in the appellant's brief concerning circumstances not reflected by the record. Miles v. State, Ala.Cr.App., 366 So.2d 346 (1978). *Page 1156 
We have examined the search warrant and the affidavit and all appears to be in order. It is made clear from the testimony that the issuing judge read the affidavit and administered an oath to the affiants. So it does appear that the judge conducted an inquiry before affixing his signature.
Appellant's next contention is that the trial court committed reversible error by refusing to allow the appellant to show her innocence by proof of the guilt of another. During the cross-examination of state's witness Officer Tender, the appellant's attorney attempted to establish that one of the occupants of the house, Frank Travis, admitted to possessing or owning some of the drugs found in the house. Officer Tender was allowed to testify that drugs were found on the person of Frank Travis. Officer Tender also testified that Travis admitted in the presence of the appellant that he owned a small wooden locked box that was found in the back bedroom of the house. Later testimony revealed that this box contained drugs. The trial court would not allow Officer Tender to testify to any statements made by Frank Travis to him that were not made in the presence of the appellant. The appellant contends that the statements excluded from the jury's consideration "would have tended to prove the innocence of the appellant."
The appellant cites three cases[1] for the proposition that statements of third persons at the time and place of the commission of a crime are admissible as an exception to hearsay under the doctrine of res gestae.[2] For res gestae to be applicable it must shed light on the main fact or be incident to what was done. Williams v. State, 291 Ala. 213,279 So.2d 478 (1973). For a multitude of cases on res gestae see: Vol. 5B Alabama Digest, Criminal Law # 363. This offense being a possessory offense is a continuing offense, and, as such, acts and statements made at the time of a raid or search for illegal drugs are included within the res gestae doctrine. Tillison v.State, 248 Ala. 199, 27 So.2d 43 (1946).
Even though one accused of a crime may show his innocence by proof of the guilt of another, provided the evidence relates to the res gestae of the offense, such evidence must exonerate the accused. As stated in Blevins v. State, 51 Ala. App. 214,283 So.2d 664 (1973):
 "`While it is always proper and relevant for accused to show that someone else committed the crime without his aid or participation, the admissibility of evidence offered to establish such fact depends on the circumstances of the case as well as the character of the evidence offered; but in general competent evidence which tends to prove that another committed the crime for which the accused is being tried is admissible if it is inconsistent with the guilt of the accused.' (Emphasis supplied)." (283 So.2d 670)
In this case any guilt on the part of Frank Travis would not be inconsistent with the guilt on the part of the appellant. Possession of illegal drugs is susceptible of joint commission. The guilt of an accused does not necessarily depend on proof of his ownership of the drugs. Radke v. State, 292 Ala. 290,293 So.2d 314 (1974).
At the conclusion of the hearing on the motion to suppress the search warrant, the appellant requested an instanter subpoena for records at the Montgomery Police Department concerning the surveillance of the appellant's house and for any reports involving the appellant in any drug activity. The trial court ordered the records to be produced and, after an in camera examination, ruled that the appellant was not entitled to see them because 1) they were the work product of the law enforcement officer and 2) revealing the documents would disclose the identity of the informant. The appellant claims the trial court abused his *Page 1157 
discretion by refusing to seal the documents and preserve them so that they could not be revealed but that they might be included in the record as an exhibit for appeal.
If an exhibit is going to be included in the record it must be admitted into evidence. We know of no authority to include secret evidence in a trial record that was not admitted into evidence.
Communications between the government and its agents are privileged when disclosure of the communications would reveal the identity of an informant. Parsons v. State, 251 Ala. 467,38 So.2d 209 (1948); Davis v. State, 46 Ala. App. 45,237 So.2d 635, affirmed 286 Ala. 117, 237 So.2d 640 (1970). An exception to this rule is where the innocence of the defendant can be shown. That is not the case here. The appellant had asked for the documents because of alleged discrepancies in time frames between the testimony of Officers Dorrill and Armstrong concerning the surveillance. The record reveals that both officers testified that they watched the appellant's house during the afternoon hours. There is no discrepancy. We believe the trial court correctly exercised its discretion in excluding the documents.
In Parks v. State, 46 Ala. App. 722, 248 So.2d 761, this court held:
 "The offense of possession of illegal drugs is susceptible of joint commission, Green v. State, 30 Ala. App. 94, 2 So.2d 324; Gunnels v. State, 21 Ala. App. 648, 111 So. 320. Further the guilt of the accused does not necessarily depend upon proof of his ownership of the drugs. Womack v. State, 34 Ala. App. 487, 41 So.2d 429; Thompson v. State, 32 Ala. App. 402, 27 So.2d 55. However, there must be evidence from which the jury might conclude beyond a reasonable doubt that defendant knew of the presence of the drugs. Such guilty knowledge may be established by circumstantial evidence. Womack v. State, supra; Thompson v. State, supra."
Appellant admitted the spoon in which the Toxicologist found a trace of cocaine belonged to her. At the time of her arrest she admitted to Officer Armstrong that she had used cocaine. Conflicting evidence is always a matter for the jury to resolve. The quantity of the drug possessed is immaterial. Harev. State, 53 Ala. App. 596, 302 So.2d 569.
The evidence in this case leaves no lingering doubt that appellant was fully aware that her house was completely saturated with marijuana, smoked and unsmoked, and she admitted smoking marijuana the night before she was arrested.
Where the jury fails to impose a fine, the trial judge is without authority to do so. Osner v. State, 54 Ala. App. 520,310 So.2d 241, certiorari denied, 293 Ala. 769, 310 So.2d 247; Section 15-18-40. Code 1975. It should be noted here that this section was repealed by the new Criminal Code, effective January 1, 1980, (Act 1977, No. 607, page 812), but the repeal has no application to this case.
The judgment of the court below to the extent that it imposed a fine of $1,000.00 in addition to the sentence of two years in the penitentiary must be treated as surplusage. Carpenter v.State, 50 Ala. App. 543, 280 So.2d 804; Osner v. State, supra.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.
[1] Quinn v. State, 21 Ala. App. 459, 109 So. 368 (1926); Erskinev. State, 21 Ala. App. 307, 107 So. 720 (1926); Pate v. State,20 Ala. App. 358, 102 So. 156 (1924)
[2] As far as we can determine, in each of these cases the defendant was present when the inculpatory statements were made. *Page 1158