TYSON, Judge.
Appellant was indicted by the Houston County Grand Jury for the offense of murder. The jury returned a verdict of guilty of the lesser included offense of manslaughter and the trial court sentenced appellant to seven years’ imprisonment. Because appellant questions the sufficiency of the State’s evidence, we will detail those facts necessary to sustain the conviction rendered at trial below.
*750 Calvin Grooms, brother-in-law of the victim, Stuart Maddox, testified that he drove Maddox to the 500 Club in Houston County on the night of February 20, 1981. Appellant and his wife, Rebecca Knight, were the 500 Club owners and proprietors. Sometime after midnight, in the early morning of February 21, 1981, Grooms and Maddox exited the night spot. Grooms got into his automobile and started his engine to warm it. As Maddox was getting into the vehicle, he told Grooms, “Give me thirty minutes,” and then he quickly reentered the club.
Thereafter, Grooms saw Maddox backing out of the club door, followed by appellant’s wife, Rebecca Knight, who was pointing a pistol at Maddox. Mrs. Knight pointed the pistol down and fired one shot. Grooms immediately drove up by the club door and told Maddox to come on and leave. Maddox got into the waiting vehicle. Grooms backed the vehicle around, and before he could start forward to leave, appellant came out of the club with a pistol. Appellant walked up to the passenger side of Grooms’ automobile and Maddox yelled “Man, don’t shoot in this car.” The vehicle door was then opened, and just as Maddox came out of the automobile, Grooms heard a shot fired. The two men then fell down out of Grooms’ view on the passenger side of the car, and then another shot was fired. Grooms exited the vehicle and saw Maddox on the ground leaning back on his hands. His left side was covered with blood.
Grooms helped Maddox into his automobile and immediately drove him to the hospital.
Officer Jackie Mendheim of the Dothan police department, testified he took a statement from appellant at police headquarters on February 21, 1981, after first reading appellant his Miranda rights. Appellant’s statement, in pertinent part, appears in the record as follows:
“He caused some type of trouble in your place and your wife asked him to leave? Yes, sir. Your wife shot into the ground to make him not come back into the building. Where were you at when she shot? I was in the back — standing beside the disco guy. So, you were in the building when your wife shot at him? Yes, sir. You went outside? Yes. Did you have a pistol drawn at that time? When I went out the door, no, sir, but, afterwards, I — where was this subject at when you went outside? When I got out the door he was on his way back in and I asked him to leave. Did he leave? No, sir, not right then. What happened? Well, I walked out and I asked him and I asked the guy driving the car to carry him home. He refused to leave. Is this after your wife shot? Yes. Did he ever get in the car? He got in and jumped out. Where were you at in relationship to the car? I was standing about five or six feet away. Had you drawn your pistol at that time? Yes, I had drawn it for — and he jumped out of the car? What did he do when he jumped out of the car? He rushed me and jumped on me. Did he grab you? Yes. Where did he grab you at? He grabbed me around the neck. Was he choking you? Yes, sir. Did you go down on the ground? Yes, sir. I went down on my knees and later fell. Who was on top? He was. Do you remember at what point the pistol went off? No, sir, I know I told my wife to get him off of me, but, I don’t remember. I was practically under the car, my head — did you aim the pistol at him? I can’t say the way I went down. I may have. Were the shots real close together or was one shot and then a minute later the other shot? I believe they were close together. Do you know where you hit him at? No, sir, I know there was blood on his shoulder and pants and he run and jumped in the ear again.... Did you ever see any type of weapon that he had? Did he have a pocket knife? I didn’t see no weapon. Did he ever threaten you? He did on the inside, but not on the outside. He just kept telling me on the inside that Rebecca was his lady and what he was going to do to the guy that was playing disco. When you were down, could you see him when he was shot? I didn’t know he had *751 got hit until I saw the blood on him. So, you didn’t point the pistol at him and pull the trigger? Ya’ll were just tussling? Right. And it went off? Yeah. Did he have hold of the pistol? He did at one time. Do you know if he had hold of it when it went off? I don’t quite remember. I know he did catch me. Anything else you want to tell me about this? No. I didn’t mean to shoot him.” (R. 69-71)
Officer Mendheim also obtained the pistol fired by appellant and the pistol fired by appellant’s wife at the time he went to bring the couple in for questioning.
Dr. John Hilbert testified he treated the victim at the emergency room of the Southeast Alabama Medical Center on February 21, 1981. He stated that the victim had a bullet wound to the left thigh which had transversed down his leg and cut a major blood vessel. In the doctor’s words, “essentially he was dead when he came in,” having bled to death from the gunshot wound to the thigh.
Dr. Thomas Gilchrist, a State forensic pathologist, testified his examination of the deceased indicated he died of a gunshot wound to the left thigh. The bullet traveled downward and severed the femoral artery which caused the victim to bleed to death.
Lonnie Harden, a State firearms coordinator, testified it was not possible for a bullet to be fired down toward the ground, and then go back up and strike someone, and then cause a downward path of damage.
The State rested at the close of Mr. Harden’s testimony.
Appellant’s evidence indicated the victim had created a disturbance at the 500 Club on the night of the shooting by threatening the disc jockey. Maddox thought the disc jockey was flirting with his girl friend. Accordingly, Mrs. Knight and then the appellant were required to use weapons to force the victim to leave the club, in order to protect themselves, their employees, their customers, and their business. Appellant presented uncontroverted evidence that he and his family were using the 500 Club as their residence at the time of the shooting.
I
Appellant contends the trial court erred in refusing to give his requested written instruction on defense of his home, business, and the safety of those therein. The record reflects the following transpired at the close of the court’s charge to the jury:
“THE COURT: Let the record show this is out of the presence and hearing of the jury. Let the record show that at the point during the instructions that I called the attorney for the State and the attorney for the Defendant up to the Bench, the attorney for the State asked me to read the further definition of intentionally, that I read it and the attorney for the State said he had no objection to the Court’s charge at that point. The attorney for the Defendant did request that I give further instructions and I denied his request—
"MR. SMITH: As to his home, this accident happened at his home; in defense of his home and in defense of third person.
“THE COURT: You asked me to give further instructions—
“MR. SMITH: As to defense on his home—
“THE COURT: —as to defense of his home and as to defense of third person.
“MR. SMITH: Right.
“THE COURT: Yes, sir. And I denied your request at that time. And I did not give further instructions.
“MR. SMITH: And the Defendant excepts.” (R. 349-350)
The bench conference referred to by the court occurred at the end of the court’s own oral charge, but prior to the court’s reading of the given written charges requested by appellant. Whether appellant was informed prior to the court’s charging the jury as to which written charges would be given and which refused is not apparent from the record. The record is not clear, therefore, as to whether the appellant’s objection quoted above was directed at the *752 court’s refusal to give his requested written charge on that matter, or whether the appellant merely orally requested an extension of the court’s charge because of the court’s partial failure to orally instruct on certain aspects of the principle of self defense.
The refused written charge referred to by appellant in brief reads as follows:
“ ‘The Court charges you that the law does not require one who is assailed in. his own dwelling to retreat from, but the law permits him, and says that it is his right, to stand his ground and kill his assailant if it necessary so to do to save his life, or to protect himself from great bodily harm, provided he was without fault in bringing on the difficulty; and in this case the Court charges the jury that if they believe from the evidence that the deceased so acted as to create in the mind of defendant reasonable belief that he himself or any member of his family was in danger of life or sustaining great bodily harm, at the hands of the deceased, then the defendant, under the law, had a right to shoot deceased and take his life if such shooting was necessary to protect his own life, or that of any member of his family, from sustaining great bodily harm at the hands of the deceased.’ ” (R. 385)
The partial failure of the trial court to instruct in his oral charge in regard to principles of law which are applicable to the case can only serve as a basis for review when the defendant objects to the oral charge and requests appropriate written extensions to the charge. Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala.1978). It appears appellant may have attempted both actions, if the refused charge cited in his brief is deemed to have been submitted in response to the court’s omission to orally charge on those points. However, the requested written charge does not comport with the same principles of law requested in appellant’s oral exception. The oral exception dealt with defense of property and third persons, while the written requested charge deals with defense of persons and duty to retreat when defending persons assailed on one’s property.
This being so, did appellant take the necessary actions to preserve for review the trial court’s refusal to give his requested written charge? Under Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), affirmed Ex Parte Allen, 414 So.2d 993 (Ala.1982), a defendant must both object to the trial court’s refusal to give his requested written charge and state his grounds before the jury retires. The record indicates that appellant took neither action following the court’s reading of the given written charges. Neither does it appear that appellant, in the above quoted exception to the court’s oral charge, pointed out a specified written charge nor offered grounds to the court as to why any refusal to such charge was error. Even assuming that appellant’s objections at that time were addressed to a preannounced refusal by the trial court to give appellant’s particular requested written charge, we find that, upon the face of the record before us, appellant failed to meet his burden in preserving error under Allen and its progeny. See, Lidge v. State, 419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala.1982); Blakely v. State, 418 So.2d 935 (Ala.Cr.App.1982); Chambers v. State, 418 So.2d 948 (Ala.Cr.App.1982). While appellant partially stated the matter to which he objected, he certainly did not make it clear to the court that he was addressing the principle of law contained in the written charge. In fact, his exception refers more to a concept of protecting his real property, of which there was no evidence of endangerment, rather than to the issue of retreat in one’s home or business. Additionally, appellant in no wise presented clear and adequate legal or factual grounds for this objection to the court’s failure to so charge.
The court did charge in its own oral charge as to the aspect of appellant’s request which related to defense of third persons, and therefore there was no error in refusing appellant’s request as to that aspect of the law. Allen, supra.
*753 We note that part of the problem on appeal is the manner in which the appellant’s exceptions to the court’s charge are presented for our review. The actual exceptions made by the appellant’s attorney prior to the jury retiring for deliberations are not present in the record. Rather, we have only a piecemeal, second-hand rendition of what occurred, as recollected by the trial court, with appellant’s acknowledgment of the same. However, if more occurred, or if the exceptions were misstated, it was the appellant’s duty to secure a correct and intelligible record on appeal. Allen v. State, 382 So.2d 1147 (Ala.Cr.App.), cert. denied, 382 So.2d 1158 (Ala.1980). As the record appears before us, appellant has failed to preserve any error for our review. Ex Parte Allen, supra.
II
Appellant asserts the trial court erred in giving additional instructions, at the jury’s request, on the definitions of first and second degree assault, as those crimes related to the court’s instructions on the definition of self-defense. He argues such instructions confused the jury in their deliberations on murder and manslaughter.
The court made it clear to the jury that his instructions on assault did not relate to any crime charged against appellant, but related rather to misconduct of the victim which could have justified the appellant in acting in self-defense.
Section 13A-3-23(a)(3), Code of Alabama 1975, specifies that the use of deadly physical force in self-defense may be used when one believes another is committing or about to commit an assault in the first or second degree. The evidence justified the court in charging the jury accordingly, and it was appropriate for the court to define the legal terms used in so instructing the jury.
As well, the judge’s initial oral charge to the jury covered the same terms and was given without any objection thereto by appellant.
The objection stated by appellant at trial appears as follows:
“MR. SMITH: Now, Your Honor, the Defendant excepts to the charge of self defense in that self defense wasn’t charged as applicable to murder in the sense that it was charged as being applicable to first and second degree assault and not as to murder itself. And we except on that basis.” (R. 359)
The actual import of the objection itself is difficult to decipher. However, it appears clear to us that whatever grounds appellant was attempting to assert below, they were not the same grounds as those argued on appeal — that the giving of the definition of assault would be confusing to the jury. In fact, it appears appellant was not objecting to the charge, but requesting a new charge as to murder. An objection not having been raised below, it cannot now be made for the first time on appeal. Showers v. State, 407 So.2d 169 (Ala.1981); Sprinkle v. State, 368 So.2d 554 (Ala.Cr.App.1978), cert. quashed, 368 So.2d 565 (Ala.1979).
Ill
Appellant’s final contention is that the State’s evidence was insufficient to establish a prima facie case against him. He contends the State’s evidence merely presented facts which proved the victim was shot, without implicating him, rather than his wife, as the one who fired the fatal shot. He points to testimony by Dr. Gilchrist which appellant argues indicated the victim may have received a wound by the ricocheting of the bullet fired toward the ground by appellant’s wife. As well, he relies on expert testimony which indicated the bullet was fired from a minimum distance of twenty-four to thirty inches.
When Dr. Gilchrist’s testimony is read in context with the record and with the State’s picture exhibit number ten to which his comments had reference, it is clear that the doctor was referring to a slight superficial wound, and not the fatal wound.
Also, the State presented positive testimony from Lonnie Harden, a State fire *754 arms expert, that it was not possible for a bullet to have been fired by someone toward the ground and have same ricochet and cause a wound with a path of downward passage to a second person, assuming both parties were erect. This testimony negates appellant’s contention that appellant’s wife fired the fatal shot, and such testimony was uncontroverted.
The evidence detailed in the statement of facts clearly presented the jury with evidence sufficient to sustain the conviction. The fact that the bullet was fired at a minimum range of twenty-four inches does not negate the contention that the bullet was fired by appellant. Evidence presented by the State indicated the victim was in a friend’s automobile, attempting to leave appellant’s premises, when appellant approached the automobile. The victim shouted, “Man, don’t shoot in this car,” and then either jumped or was pulled out of the vehicle. During the scuffle which followed the victim received the fatal shot. There was, therefore, prima facie evidence of an unjustified homicide. While the events might be viewed as a case of self-defense, any conflict in the evidence was for the jury to resolve. Mack v. State, 348 So.2d 524 (Ala.Cr.App.1977). As well, the credibility of the defendant as to evidence of self-defense was for the jury. Whether appellant was aiding his wife or his employee was for the jury’s determination. Mack, supra. There was no error in the trial court’s refusal to grant appellant’s motion to exclude the evidence. No error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
All the Judges concur.